POTTER and others *against* THE PRESIDENT AND FELLOWS
OF YALE COLLEGE.

Where *A. B.* and *C.*, of the first part, entered into a written agreement
with *D.*, the authorized agent of *Yale College*, of the second part, in
which the former were described as " a committee of the subscribers
to raise a fund for the benefit of the congregational society in *P. ;*"
the agreement contained sundry stipulations by and in favour of
such party of the first part; and was signed by *A.* " in behalf of him-
self and the rest of the committee ;" in an action brought by *A. B.*
and *C.* against the corporation of *Yale College*, for a breach of such
agreement, it was held, that the legal interest was in the plaintiffs
alone, and that the action was properly brought in their names, with-
out joining the other subscribers to the fund.

The stipulations in such agreement being—that the plaintiffs should
deposite in the *Eagle Bank* the sum of 3000 dollars to the credit of the
defendants; that in consideration thereof, the plaintiffs might receive
of the bank, for the use and benefit of said fund, the dividends which
should accrue on 3000 dollars of the stock of the bank, standing in the
name of the defendants on the books of the bank, from the time of the
next semi-annual dividend, until the expiration of one year after no-
tice in writing given to the cashier, that the defendants would repay
to the plaintiffs said sum of 3000 dollars; when the defendants should
refund said sum accordingly ; and further, that the defendants should
refund said sum within six months after demand in writing made
therefor ; after which and the repayment of said sum, the right of the
plaintiffs to receive dividends should cease; it was held, 1. that
such agreement did not, on the face of it, disclose a *trust* between the
parties ; 2. that it did not, on the face of it, disclose a *fraud* on the
law regarding privileged stock; 3. that parol evidence was inadmis-
sible to shew, that the transaction involved a trust and was a fraud
upon the law, as the effect of such evidence would be to vary a written
agreement, and as the defendants were precluded from alleging, that
they had combined with the plaintiffs to commit such fraud ; and 4.
that, in the absence of any actual intention to evade the statute against
usury, the agreement, in connection with the facts, that when it was
entered into, the market value of *Eagle Bank* stock was, and for sev-
eral years before had been, ten *per cent* above *par*, and that the divid-
ends averaged seven *per cent per annum,* was not usurious.

THIS was an action of *assumpsit* to recover of the defend-
ants the sum of 3000 dollars, deposited in the *Eagle Bank* un-

der the following agreement : "This agreement, made by and *Litchfield,* between *Daniel Potter, Jacob Hemingway, Samuel Camp* jun., *June,* 1830. *Leverett Bishop,* and *Seth Thomas,* all of *Plymouth,* in *Litchfield* county, of the first part, as they are a committee of the sub- Potter *v.* scribers to raise a fund for the benefit of the congregational Yale College. society in *Plymouth,* and *James Hillhouse,* treasurer of *Yale College,* for and in behalf of the *President and Fellows of Yale College,* of the second part, witnesseth, That the said party of the first part agrees to deposite in the *Eagle Bank of New-Haven* the sum of 3000 dollars to the credit of the said President and Fellows. In consideration whereof, the said party of the second part, covenants and agrees with the said party of the first part, that the said party of the first part may and shall receive of said bank, for the use and benefit of said fund, the dividends which shall accrue on 3000 dollars of the stock thereof, standing in the name of the said President and Fellows in the books of said bank, from and after the first day of *July* next, until the expiration of one year after notice shall have been given to the cashier of said bank in writing, that the said party of the second part will repay to the said party of the first part the aforesaid sum of 3000 dollars, at the expiration of one year, which notice shall be left on the first day of *January,* or the first day of *July;* and the said party of the second part agrees to refund said sum accordingly. And said party of the second part further agrees to refund to the said party of the first part the aforesaid sum of 3000 dollars within six months after demand in writing shall be made therefor; after which, and the repayment of said sum, the said party of the first part shall not be entitled to receive the dividends aforesaid.

Witness our hands, at *New-Haven,* this 23d day of *June,* 1824.

[Signed.]     *James Hillhouse,* Treasurer of *Yale College.*
*Daniel Potter,* in behalf of himself and the rest of the Committee."

The cause was tried, on the general issue, at *Litchfield, August* term, 1829, before *Daggett,* J.

On the trial, the execution of the agreement above recited, was admitted; and it was proved, that *James Hillhouse,* at the date of that instrument, was, and long before had been, treasurer of *Yale College,* and was duly authorized to enter into such agreement; and that the sum of 3000 dollars mentioned therein, was, on the 23rd of *July* 1824, deposited, by the plaintiffs, to the credit of the defendants. To this agreement the

*Litchfield,*
June, 1830.

Potter
*v.*
Yale College.

defendants objected, on the ground that it appeared from the face of it, that other persons, not parties to this suit, had an interest in the subject matter thereof, and ought to have been joined with the plaintiffs. This objection was overruled ; and the agreement was read in evidence to the jury.

It was also proved, that the plaintiffs, on the 8th of *April,* 1828, demanded of the defendants said sum of 3000 dollars. At the time when the agreement was made, and for several years before, the market value of the stock of the *Eagle Bank* was ten *per cent* above *par ;* and the dividends averaged seven *per cent. per annum.* The plaintiffs received two dividends on thirty shares of stock, *viz.* one on the 1st of *January,* 1825, and one on the 1st of *July,* 1825. The *Eagle Bank* failed in *September,* 1825 ; and the stock thereof became, and ever since has been, wholly worthless.

The defendants offered parol testimony to shew, that at the date of the agreement, it was the object of the plaintiffs to obtain thirty shares of the *privileged* stock—*i. e.* stock reserved for ecclesiastical societies and other corporations, which was not transferable ; that the defendants held many shares of that stock ; that all that could be subscribed as privileged stock had been previously taken up ; that the plaintiffs applied to the defendants to permit them to become the owners of thirty shares of such stock, and, as it was not transferable, that it should remain standing in the name of the defendants, as trustees for the plaintiffs ; and that to this proposition the defendants assented. This testimony was received subject to the opinion of the court.

The defendants contended, that this transaction, as claimed by the plaintiffs, was a fraud upon the law ; the plaintiffs not being authorized to hold or avail themselves of this privileged stock. The defendants also insisted, that the agreement, on the face of it, shewed a trust between the parties ; and that the plaintiffs, therefore, could not throw the loss of this stock on the defendants. They further claimed, that if it was not a trust, then it was usurious and void.

The judge instructed the jury, 1. that the action could be sustained in the name of the plaintiffs, the objection notwithstanding ; 2. that it was not a fraud upon the law ; 3. that the written agreement read in evidence could not be enlarged, explained or varied, by parol evidence ; 4. that it did not, on the face of it, shew a trust ; and 5. that it was not of itself, ta-

ken in connexion with the proof, that the stock was ten *per* *Litchfield,* cent. above *par*, and the dividends equal to seven *per cent.* June, 1830. usurious. The judge then directed the jury, that unless they should find, that this was an arrangement entered into with a view to obtain a greater rate of interest than is by law allowed, and a contrivance to evade the statute, they ought to find for the plaintiffs to recover the sum deposited, with interest since the expiration of six months from the 8th of *April*, 1828 ; but if they should find it usurious, subject to this direction, they would give a verdict for the defendants.

Potter
*v.*
Yale College.

The plaintiffs obtained a verdict, and the defendants moved for a new trial.

*D. S. Boardman* and *Bacon*, in support of the motion, contended, 1. That the action should have been brought in the names of all the subscribers, they being the persons in interest. 1 *Chitt. Plead.* 3–5. The money was the property of all the subscribers jointly, in proportion to the sums by them respectively subscribed. The plaintiffs are not trustees, having the legal interest vested in them ; but the legal, as well as the beneficial interest, is in the subscribers. Nor are the plaintiffs agents coupled with an interest, and having, on that ground, a special property. They are not entitled to commissions or profits. The question, then, is reduced to this ; whether the plaintiffs, from their character as agents merely, and that character disclosed on the face of the agreement, are entitled to sue. In such case, the agent can never maintain the action ; and it makes no difference that the agent happens to be one of the principals. 1 *Wms. Saund.* 154. n. *Piggott* v. *Thompson*, 3 *Bos.* v. *Pull.* 147. *Gilmore* v. *Pope*, 5 *Mass. Rep.* 491. *The Taunton and South Boston Turnpike Corporation* v. *Whiting*, 10 *Mass. Rep.* 327. If an action had been brought *against* the plaintiffs, by the defendants, on the contract, for the 3,000 dollars ; it is clear, that the action could not have been sustained, the agency of the plaintiffs being disclosed. 1 *Chitt. Plead.* 24. *Hanson* v. *Roberdeau, Peake's Ca.* 120. 3 *Stark. Ev.* 1620. *Owen* v. *Gooch*, 2 *Esp. Rep.* 567. The Duke of *Norfolk* v. *Worthy*, 1 *Campb. Rep.* 337. Arguments drawn from a class of cases where defendants, being agents, have been held responsible, have no application to this case. A party may always bind himself *personally ;* and the addition of " agent" will be considered as *descriptio personæ.* It was on

this ground that the cases of *Burrell* v. *Jones* & al. 3 *Barn. & Ald.* 47. (5 *Serg.* & *Lowb.* 223.) *Buffum* v. *Chadwick,* 8 *Mass. Rep.* 103. *Thacher* & al. v. *Dinsmore,* 5 *Mass. Rep.* 299. and *Forster* v. *Fuller,* 6 *Mass. Rep.* 58. were decided. Nor is this like the case where credit is refused to the principal, and given to the agent only. 3 *Stark. Evid.* 1620.

It is apparent from the face of the agreement, that " the party of the first part" is *the subscribers.* The plaintiffs profess to be " a committee" acting in their behalf.

2. That from the face of the agreement, it appeared, that the defendants received the money *in trust* for the plaintiffs ; and consequently, that the defendants, in the entire absence of any *mala fides* or negligence, on their part, are not liable. *Privileged* stock is a mere deposite in the bank, with a right to receive dividends on such deposite while it remains. The deposite creates the stock ; it *is* the stock. The plaintiffs deposited 3,000 dollars, in lieu of the same amount previously deposited by the defendants, and held stock to that amount in the name of the defendants, because they were legally incapable of holding it in their own names. *In rei veritate,* there was a transfer of the defendants' privilege to the plaintiffs ; and the defendants, for a special reason, held the stock *for* the plaintiffs, and were, consequently, the *trustees* of the plaintiffs. The legal title was in the defendants ; the beneficial interest in the plaintiffs. This is the very definition of a trust.

It is no objection to this being a trust, that it might be terminated. It is true, that the *cestuy que trust* might call for the fund. This a *cestuy que trust* may ordinarily do. The trust in this case might be perpetual ; and without any act done by the *cestuy que trust,* it would be.

3. That if this did not appear from the face of the agreement to be a trust, the parol evidence adduced by the defendants clearly shewed the trust ; and such evidence was admissible for this purpose. These matters are extrinsic, and stand well with the instrument. Now, it is a general rule, that the parties to a written agreement are not precluded from proving facts *consistent* with such agreement, though not expressed in it. 3 *Stark. Evid.* 1047. The situation and circumstances of the parties may be shewn, by parol evidence, for the purpose of aiding in the construction of the writing. 1 *Phill. Ev.* 417.

4. That if this was not a trust, but a mere loan, or money transaction, it was, in connection with the admitted facts, *per se*

usurious. Where the principal is to be paid at all events, and *Litchfield,* the hazard goes only to the interest, the contract is usurious, June, 1830. if more than lawful interest *may be* received. *Roberts* v. *Trenayne, Cro. Jac.* 507, 508. *Jestons* v. *Brooke, Cowp.* 793. *Mastin* v. *Abdee,* 1 *Show.* 8. *S. C. Comb.* 125. S. C. by the name of *Mason* v. *Abdy,* 3 *Salk.* 391. *Murray* v. *Harding,* 3 *Wils.* 395. *Morse* v. *Wilson,* 4 *Term Rep.* 353. 355, 6. Lord *Chesterfield* & al. v. *Janssen,* 2 *Ves.* 153, 4, 5.

Potter
v.
Yale College.

5. That if the parol evidence offered by the defendants, was admissible to shew, that privileged stock was the object of the parties in the negotiation, the defendants are entitled to a new trial, that this evidence may go to the jury, from which and the other evidence, they may find a sale of the beneficial interest of the stock, or usury.

*Benedict* and *J. W. Huntington,* contra, contended, 1. That the action was sustainable in the name of the plaintiffs. The contract was made with them *personally.* They constitute " the party of the first part." They agree, that they will deposite 3,000 dollars in the *Eagle Bank* to the credit of the defendants ; and the deposite was made by them. The contract is subscribed by *Daniel Potter,* not in behalf of the subscribers to the fund, but " in behalf of himself and the rest of the committee," the present plaintiffs. *Hillhouse,* on the contrary, throughout the contract and in signing it, professes to act as the agent of *Yale-College.* The writing discloses no other persons, who could maintain the suit ; nor does it appear, that any evidence was offered for that purpose. To determine who are entitled to sue for the breach of an agreement, the general rule is, that we must consider with whom the agreement was made ; for they alone can enforce its performance, and have a right to complain when it is broken. *Com. Dig. tit.* Abatement. E. 12. At any rate, the action *may be* sustained in their names, if it may be also in the names of others, who are the persons really interested. 1 *Chitt. Plead.* 3, 4, 5. 1 *Selw. N. P.* 831. n. *Houghton* & al. v. *Matthews* & al. 3 *Bos. & Pull.* 390, 1. 3 *Stark. Evid.* 83. n. *k. Skinner* v. *Stocks,* 4 *Barn. & Ald.* 437. (6 *Serg. & Lowb.* 478.) *Norton* v. *Herron,* 1 *Car. & Pay.* 648. (11 *Serg. & Lowb.* 511.) *Burrell* v. *Jones,* & al. 3 *Barn. & Ald.* 47. (5 *Serg. & Lowb.* 223.) *Peter* v. *Cocke,* 1 *Wash.* 257. 3 *Stark. Evid.* 1618. and n. *f. Atkyns* & al. v. *Amber,* 2 *Esp. Rep.* 493. *Pal. Ag.* 282, 3. *Chit-*

*ty on Bills* 36. n. 1.    *Stackpole* v. *Arnold,* 11 *Mass. Rep.* 27. 29.    *Buffum* v. *Chadwick,* 8 *Mass. Rep.* 103.

2. That the contract did not, on the face of it, import a trust, binding the defendants to hold stock for the plaintiffs, which, for the time being, was to be the property of the plaintiffs, and at their risk.    In the first place, this was a contract to pay *bank dividends,* and did not oblige the defendants to keep stock at all.    It might be fulfilled as well without as with their owning stock.    Other funds equivalent to the dividends provided at the bank, would have satisfied their contract.    Secondly, the plaintiffs were never to have the stock, in any event or contingency ; and never could demand any thing more than a repayment of their money.    Thirdly, if the defendants were obliged to keep stock, in order to enable them to fulfil their contract, this would be nothing to the plaintiffs.    A man who contracts to run a stage for another, for a given time, might as well claim, that he is a mere trustee of the horses he puts upon the road for that person, because the parties know, that a stage cannot be run without horses.    Fourthly, the stock was not transferable ; and therefore, the defendants have sustained no loss.

3. That the parol evidence offered by the defendants, was inadmissible.    The writing contains a complete and perfect agreement, defining exactly the rights of the parties, and containing no allusion to any trust ; and therefore, it could not be varied or enlarged, by parol proof.    *Woodbridge* v. *Spooner &* ux. 3 *Barn. & Ald.* 233. (5 *Serg. & Lowb.* 268.) *Free & al.* v. *Hawkins,* 8 *Taun.* 92.    1 *Phill. Evid.* 427. n. *a.    Jackson* d. *Bonnell & Goodyear* v. *Foster,* 12 *Johns. Rep.* 488.    *Hunt* v. *Rousmanier,* 8 *Wheat.* 211.

4. That the plaintiffs are not precluded from a recovery on the ground that the contract was a fraud upon the law.    It is to be observed, in the first place, that the object of the suit is not to compel the defendants to transfer stock, or even to pay dividends.    It seeks to *rescind,* not to enforce, any such agreement ; and to render it utterly impossible for the plaintiffs ever to claim stock.    A recovery, therefore, may be sustained upon the principles laid down in *Lowry &* al. v. *Bourdieu, Doug.* 468. 471.    *Jaques* v. *Withy &* al. 1 *H. Bla.* 65.    2 *Com. on Contr.* 102.    But secondly, the *dividends* were the defendants' ; and they might apply them to any use they pleased.    Thirdly, this ecclesiastical society might have subscribed before the

grant to *Yale-College*, (*a*) and on the same terms. The agree-ment, then, as claimed, could not be opposed to the policy of the law. Fourthly, if any illegal contract was disclosed in the case, it was shewn by the parol evidence offered by the defend-ants, and was in opposition to the written contract.

*Litchfield,*
June, 1830.

Potter
*v.*
Yale College.

5. That the charge of the judge on the point of usury, was correct. It was submitted to the jury as a question of fact, whether there was an arrangement entered into to obtain more than *six per cent.;* and this has been negatived, or not found, by them. There existed, then, no corrupt agreement. In the next place, was the contract necessarily usurious? The con-tract did not secure more than *six per cent.* interest on any con-tingency. The dividends might, indeed, be more or less, or even nothing; but no amount of interest whatever, was secur-ed, by the contract. It will be difficult to find a case of usury, embracing neither a corrupt agreement, nor a reservation of unlawful interest.

HOSMER, Ch. J. The questions in the case, relate to the construction and validity of the written contract.

1. It was, in the first place, insisted, by the defendants, that persons not parties have an interest in the subject matter of the suit, and should have been joined with the plaintiffs. The ob-jection was overruled, by the court on the circuit, and the con-tract was read in evidence to the jury. The agreement was made between the plaintiffs, of the first part, "as they are a committee of the subscribers to raise a fund for the benefit of the congregational society, in *Plymouth;*" and by "*James Hill-house,* treasurer of *Yale-College,* for and in behalf of the Pre-sident and Fellows of *Yale-College,*" of the second part. It contains several stipulations, keeping up the description of the plaintiffs being the party of the first part, and *James Hillhouse,* authorised as aforesaid, being party of the second part; and was signed by *Daniel Potter,* in behalf of himself and the rest of the committee, and by Mr. *Hillhouse,* as treasurer of *Yale-College.*

(*a*) See an act passed in 1824, by which it is enacted, that so much of a former act as provides, that no college, school or ecclesiastical society, or other charitable institution, shall subscribe a greater sum than 5,000 dollars to any one bank, shall not be construed to extend to any sub-scription which shall be made by the President and Fellows of *Yale-Col-lege* to the *Eagle Bank.*

*Litchfield,*
June, 1830.

Potter
*v.*
Yale College.

The defendants' objection concerning the party plaintiff, is founded on the supposition, that the plaintiffs are the agents of the before mentioned subscribers ; that the agreement was made for the exclusive benefit of the subscribers ; and therefore, that the action should have been brought in their names. I think it very clear, that the agreement was not made with the subscribers, in any sense. That the contract was made expressly with the plaintiffs, does not admit of a question. From the beginning to the end of it, the stipulations are to *Daniel Potter,* and the rest of the committee, by name ; and they are called, throughout, the *party of the first part.* The expression immediately succeeding their names, that is, "as they are a committee of the subscribers to raise a fund for the benefit of the congregational society in *Plymouth,*" makes no difference in the case. It is merely a *descriptio personarum ;* and is analogous with a common expression in a promissory note taken by an administrator, in which the promise is made to him, as administrator of the deceased person, whose estate is committed to his trust. The point has often been adjudged. *Burrell* v. *Jones* & al. 3 *Barn. & Ald.* 47. *Peter* v *Cocke,* 1 *Wash.* 257. *Talmage* v *Chapel* & al. 16 *Mass. Rep.* 71. *Com. Dig. tit. Pleader.* 2 D. 1. In the case of *Buffum* v. *Chadwick,* 8 *Mass. Rep.* 103., an action was brought on a promissory note made payable to *Arnold Buffum, agent of the Providence Hat Manufacturing Company.* It was determined, that the promise was to the agent personally ; and that the adding of the character to his name was only a *descriptio personæ.* This determination is directly in point for the plaintiffs.

That this was the intention of the agreement, it is difficult to doubt. A stipulation to pay to the subscribers, the money advanced by the committee, would seem to be a resumption of it, and an annihilation of the fund.

It was contended, and on this was the main stress of the argument, that the contract was entered into *for the use and benefit of the subscribers ;* and of consequence, that theirs is the legal interest and right of suit. I admit the principle, that where an agreement is made with an agent, for the *sole and exclusive benefit* of his principal, the principal has the legal interest. 1 *Chitt. Plead.* 4. *Piggott* v. *Thompson,* 3 *Bos. & Pul.* 147. *Gilmore* v. *Pope,* 5 *Mass. Rep.* 491. *Taunton & South Boston Turnpike Co.* v. *Whiting,* 10 *Mass. Rep.* 327. This is according to the intent and effect of the engagement.

3 *Stark. Ev.* 1589. 1590. *Shaw* v. *Sherwood, Cro. Eliz.* 729. *Litchfield,*
On the other hand, it is equally well established, if an agent June, 1830.
has a special property and personal interest in an agreement
made with him, that his is the legal interest and right of action.
*Atkyns* & al. v. *Amber,* 2 *Esp. Rep.* 493. Duke of *Norfolk* v.
*Worthy,* 1 *Campb.* 337. Both of these principles rest on the
same grounds of immutable justice and legal construction.

Potter
*v.*
Yale College.

Had the subscribers paid the subscription money, they would
have no right to resume it; and their legal interest, independent
of positive contract, would be confined to the application of the
fund in advancing the prosperity of the congregational society,
and not to a restitution of the sums advanced. It is clear, that
the agreement contemplated no such event; and hence the pro-
vision, that the dividends should be received, " for the use and
benefit of said fund." In the supposed legal right of the sub-
scribers, waiving all other considerations, there is a radical de-
fect. It does not appear, nor can the fact be presumed by the
court, that they have ever paid any part of the sums subscribed
by them. On the defendants, it devolved to exhibit proof to
this effect, if it existed; but no attempt of this kind was made.

From all the facts appearing, it is a warrantable inference,
that the plaintiffs advanced their own money on the aforesaid
agreement, upon the credit of the subscription; and that they
have not, in any manner, been reimbursed. It follows, there-
fore, that they have not only a personal interest in the con-
tract, but the sole and exclusive interest, and of consequence,
the legal right of action.

2. The defendants' next objection is, that the agreement, *on
the face of it*, evinces a *trust* between the parties; and that, for
this reason, the plaintiffs cannot throw the loss of the stock on
the defendants. The court charged the jury, that no trust was
disclosed *on the face* of the contract. The correctness of the
charge does not admit of dispute. So far from evincing a trust,
the writing exhibits an agreement of an ordinary character;
on the one part, to advance money, and on the other to permit
the reception of certain dividends, and to repay, when de-
manded, the money advanced.

3. In the next place, the defendants insisted, that the trans-
action between the parties *in fact* involved a trust, and was a
fraud on the law authorizing the subscription for shares of the
*Eagle Bank*, by charitable corporations. In proof of this, pa-
rol testimony was adduced, which, in substance, went to show,

*Litchfield,*
June, 1830.

Potter
*v.*
Yale College.

that at the time the agreement was made, it was the object of the plaintiffs, in which the defendants co-operated, as all the privileged stock of the bank had been taken up, to purchase thirty shares of the stock standing in the defendants' names, the same not being transferable; and that it should remain in their names, they being the plaintiffs' trustees. This evidence the court adjudged to be inadmissible. Of the propriety of this determination, there exists no reasonable question. The defendants attempted, by parol evidence, to contradict and vary a written agreement. Vide 3 *Stark. Ev.* 993. to 1013. By the writing, the plaintiffs, so far from contemplating a purchase of the stock, were entitled only to the dividends; and this agreement was determinable on notice by either party. The offered testimony to show, by parol, an intended purchase and ownership of the stock, was in palpable opposition to the written contract. Nor is this the only objection to the evidence. If a fraud was perpetrated on the *Eagle Bank,* which I do not admit, as the stock was originally procured by a fair subscription, it is clear, that the defendants' mouth was stopped from making the allegation, that they, in combination with the plaintiffs, had agreed to commit the fraud alleged. *Philips* v. *Biron* & al. 1 *Stra.* 509. *Smith* v. *Bouchier* & al. 2 *Stra.* 993.

4. Lastly, it was proved by the defendants, that when the contract between the parties was made, the market value of *Eagle Bank* stock was, and for several years before, had been, ten *per cent* above *par;* and that the dividends averaged seven *per cent. per annum.* Upon these facts, the defendants claimed, that the contract was usurious. The jury were charged, that the contract *per se* was not tainted with usury; but if an arrangement was entered into, with a view to evade the statute of usury, and to obtain unlawful interest, that this would render it usurious. The jury found their verdict for the plaintiffs; and this negatives any actual intention of evading the law. Was the contract, then necessarily, or by legal construction, usurious? There was a contingency rendering it entirely uncertain whether the plaintiffs would obtain more than six *per cent.* on the money advanced, or even any thing. The defendants, founding themselves on *Roberts* v. *Trenayne, Cro. Jac.* 507., and other cases comprising similar doctrine, have argued, that where the casualty goes to the interest only, and not to the principal, it is usury. The doctrine is well established; but it is inapplicable to this case. In all the cited cases, it will

be found, that more than lawful interest was expressly reserved; and that, to obviate this explicit reservation, a contingency which might lessen or annul the interest, was relied on. The contract between the parties, was for one to give, and for the other to receive, unlawful interest. But in this case, no amount of interest was the subject of stipulation; and the verdict of the jury proves, that there was no arrangement made, founded on an intention to evade the law. It is impossible to say, that a corrupt agreement was made to obtain unlawful interest, when for any specific sum or interest, there was no agreement whatever.

*Litchfield,*
June, 1830.

Potter
*v.*
Yale College.

On the whole, the transaction in this case was not a loan on interest, but it was a *bona fide* purchase of dividends.

I do not advise a new trial.

The other Judges were of the same opinion.

New trial not to be granted.