WRIGHT, J.
The tendency of this evidence is to establish one link in the chain of testimony, and is admissible. Parol evidence may be given to show that this contract was for the use of the state, and so make out the plaintiff’s right on either of the two first counts. The points argued by the defendant’s counsel are open on the record; and they might have been urged on demurrer; but as an issue has been joined, they need not now be decided. Should there be occasion to do so, the matter can be brought to our notice by a motion in arrest.
664] *The plaintiff then read the subscription paper and the law of the state, authorizing the canal commissioners to solicit donations for the canal, dependent on particular locations, and creating a board of fund commissioners to manage the fund, &c.
Kelly, who had proven the location of the canal to Clevelandin 1825, and its construction to and through that place in 182V, was asked by the defendant, what was the relative expense of construction on the two sides of the river.
Tappan, for the state, objected,
that it was incompetent to vary the written contract, or make it subject to conditions not inserted in it, because the parties may have talked of something else.
Willey, for the defendant,
urged his right to ask the question, and stated that his defence consisted of these points,
1. That the contract was made to make up the supposed difference between the expense of bringing the canal on the east and on the west side of the river.
2. That the contract was executed by mistake of the defendant,, and,
3. That it was delivered upon a condition.
Tappan asked what was expected to be proved by the witness ?
Willey replied that he intended to prove the declaration of the commissioners and Bates,
the chief engineer, and of the other engineers and agents of the state, as to the location of the canal, before the subscription paper was circulated.
* Tappan objected to the declaration of Bates,
or any other [665» than the canal commissioners, as no other had power to act for the state.
Willey claimed that the contract was the result of these fraudulent representations,
*687 WRIGHT, J. It is clearly incompetent to vary the written contract by parol testimony, though you may show that the writing was obtained by fraud, and detail the circumstances of fraud. We do not see how it will avail the defence, to show the defendant mistaken in the contract, unless there is fraud. Fraud, in fact, is shown by proof of the suggestion of falsehood, or the suppression of truth. Counsel know, if they expect to make out fraud, and will proceed if such be claimed. They have heretofore said they did not expect to show intentional misrepresentation. But it will be best to let the state go on with its case, and bring forward the facts of the defence in their chronological order. As to the delivery on condition we do not understand what is meant. If the contract was delivered as an escrow that may be shown, but no condition of the contract repugnant to its face can be shown.
The plaintiff then proved the delivery of the contract to the canal commissioner at Columbus, and rested.
The defendant called Clark as a witness.
*688 and if the state took the benefit of the contract, they ratified the act of the agent in obtaining it.
Tappan objected to this as irrelevant.
Willey and Pease, contra, contended,
that having shown the ■difference in the estimates on the two sides of the river, and the contract to pay the difference, they now proposed to show that in the fall of 1824, the canal was located and partly constructed below the falls in the river, and that owing to the height to which the water rises, it was impossible to construct the canal as proposed on that level, and that it was competent to show this knowledge in the en-666] *gineers, and hence deduce the fraudulent intent to obtain 'the subscriptions by impossible estimates.
WRIGHT, J. If the contract was obtained by fraud it is invalid. If the fraud was in the person who obtained the subscription, though he acted without authority, the state by taking the benefit of it, adopts tbe agency which obtained it, and holds it, as it received it, tinctured with fraud, or free from it. ■ If counsel say they expect to prove fraud m the agency, they may proceed.
Evidence was then given to show that the engineers examined, run lines, and made estimates on both sides of the river; that the ■estimate on the west side was the lowest; that Kelly, a canal commissioner, on being inquired of, said the work was a public one and ■ought to be located on the best route and where least expensive, without regard t.o the interest of the village, and if cheaper on west side, the Cleveland people ought to make up the deficiency, and he referred to Bates for the estimates when completed; Bates ■said the estimates differed several thousand dollars, in favor of the west side, and if the people of Cleveland considered their own interest they would make up the difference. There was much excitement — the people held meetings, appointed committees — they explored the routes and took affidavits to show errors in the estimates and to show' the impracticability of constructing a canal on thelevel contemplated, obtained subscriptions, and laid the whole before the canal commissioners. Ii. Perry obtained the defendant’s subscription, and told him what Kelly and Bates said — Kelly did not sit or take part in the decision of the board as to the location, because of his interest.
A witness was called to prove it impossible to take the canal across the west side where the location was made at thelevel of the ■construction above.
Tappan objected.
Willey contra.
WRIGHT, J. It is difficult to understand the defence. At one time we are told it is not expected to establish fraud in fact, but only mistake: at another, that the estimates and location are false, and so made to induce the subscriptions, and that the subscriptions, resulted from this fraudulent influence. If counsel know the defence on which they intend to rely, a frank avowal of it would save time and we should think with better avail, than results from this continued effort to press in evidence against the opinion of the court. A quick and oft repeated change of front may be good in military tactics, but we think it in bad taste and out of place here. We deem it necessary only to repeat that if counsel expect to connect the alleged false location and estimates with a design on the part of the agent of the state, by means of them to induce the subscription of the defendant, and that the contract was so obtained, they can proceed; but, if they shall find themselves in error as to the facts, or if they intend to deceive the court by introducing this evidence with a design different from the one avowed, calculating upon their use of it to prejudice the jury, we shall feel bound to take care that the design fail of its object. If the estimates, &c., were falsely made with the design to extort from the defendant his subscription, it is competent to prove it. We hope we are now understood — -counsel can proceed or abstain from the examination as they may choose to place themselves before the court. We shall confide in their statements.
Evidence was then introduced, to show that the water rose six or eight inches over the towing path of the canal, and that upon the level of the proposed aqueduct across the river, it would be hazardous to take the canal across — these facts were known before the subsci’iption. The brother of the defendant called on him and obtained the subscription, acting as a committee-man for the town, not as the agent of the canal commissioners, and told him what was said, and that they must make up the difference.
Judge Wood was called and asked to relate a conversation with the chief engineer, Bates, at Columbus, after the subscription paper was signed, as to the practicability of constructing the canal on the west side.
WRIGHT, J. This evidence is improper. The declarations of the engineers, in respect of matters as to which reference was made to *690 ■667] *them, are admissible, but wbat is now sought is not of that character. What he said of the subscription could not have induced it. If the agent had knowledge of any fact in the cause, he is a competent witness to prove it. You cannot forbear to call a witness, and on that account give evidence of what he has told others. He is neither a party nor witness to make his declarations evidence.
Willey objected.
S. J. Andrews and Tappan for the state.
Willey and Pease for the defendants.
Kelly, the canal commissioner, was called by the state and asked as to what amount of labor appeared by the canal books to' have been done on the canal near the crossing of the river.
WRIGHT, J. If the witness knows about the expenseindependent of the books he can state it. He cannot say what appears on the books — they are better evidence of what they contain, and might be produced.
The case was argued to the jury, by
WRIGHT, J. to the jury. It is incumbent on the state to prove to your satisfaction, before she can ask of you a verdict: 1. That the defendant signed the paper read to you in evidence; 2. Tnat the canal has been located to the village of Cleveland.
If these two things are proven, and there seems no dispute before you about either, then you will proceed to consider of the defence. The first question raised by the defence is, was the writing delivered to the canal commissioners as an escrow, or upon the condition that it should only be operative as an obligation upon the happening of some collateral event consistent with the face of the obligation ? From the evidence you are required to say, if there was any condition to the delivery of the subscription, and what it was. If the proof shows the condition of the delivery was that the canal should be carried no farther than Callihan’s point, or be terminated before it reached the village of Cleveland, that would be no defence,, because the written promise is to pay if the canal is located on the east side of the Cuyahoga river from the lower rapids to the village of Cleveland, anda condition of delivery, that the canal should stop short of the village, would be repugnant to the promise contained in the paper, and so be of no avail to avoid it. To show such a *691 condition would, establish, no escrow, but an attempt to set up an oral contract to vary the terms of the written one. This the defendant cannot do. But if Callihan’s point, and the village of Cleveland, in the understanding of the parties, meant the same place, as Mr. Case, the witness and agent of the defendant in the delivery, ^understood, you will have no difficulty on this point, for the [668 canal was located to the point, which is "a few rods short of the line of the village plat.
But was it the condition of the delivery that the canal should stop at Callihan’s point, and be no further continued ? Clark says the subscribers left the committee free to deliver or withhold the subscription at their discretion; but gave no instructions to impose conditions on the delivery. He gave the paper to Case, and does not know what passed when it was delivered to the board. Case says the object of the subscription was to procure the canal on the east side of the river; that four points of termination were spoken of, that he inquired if he understood right that the canal was to come down to Callihan’s point and terminate there, and on receiving an affirmative answer, he told you, “ I cither said if the canal is made as now represented, or, zipon condition the canal is made as now represented, I deliver the subscription,” and did so. Kelly, Tappan, and Williams, canal commissioners, and Barber, who were present, and whose evidence you have, did not understand any condition to be imposed. Was there then any condition ? If so, what was it ? The defendant assumes there was a condition; if he fail to satisfy you of it, his defence fails. But if there was a condition on either alternative of Mr. Case’s evidence, then was that a condition upon which alone the writing was to be obligatory? or, was it only the condition, about which they were striving to come to an understanding, before ho should deliver the paper at all? If the latter, it is no defence — nor is it one, if the former, because repugnant to the contract.
The next point assumed in the defence is, that the contract was obtained from the defendants by fraud. The arguments of counsel concede the following facts as proven in the case: that the canal was under contract to the rapids — the public was interested in its termination — lines had been run on each side of the river by the engineers with a view to the location to the lake, and an estimate of the expense of construction on the different routes was in progress by the chief engineer — the acting canal commissioner, Kelly, expressed the opinion that the canal could be brought down on the west side at less expense than on the east side — that the commis *692 sioners ought to locate with a view to the general interest, not the-particular interest of Cleveland, and if the difference in expense was not made uj>, it would go down on the west side — that the defendant’s brother who procured this subscription, told him he had explored the line with the commissioner, ascertained that the expense would be $6,000, that a meeting of the town had been held,. 669] *and a committee appointed to obtain subscriptions and proceed to Columbus, and they must raise the difference in the expense;, he then subscribed. The brother was not acting for the state, nor at the instance of the engineers, or the canal commissioners.
It is claimed by the defendant that the representations on.which the contract was obtained were fraudulent, and that it is, in consequence, void. His counsel insists that it is in proof that it was impossible to cross the river and come down with the canal on the west side according to the plan proposed — that the aqueduct was-on too low a level — that the estimates were unfair, because the line had not been run the same length on each side of the river. Hence-they urge you to find fraud in the agents of the state, and insist that if the plan agreed upon is now ascertained not to be feasible, that the contract is vitiated. The court differ from them in this— the law by which you must be governed, is not as they claim. If it was impossible to cross the river, and that was known to the engineer and commissioner, and thej'- nevertheless falsely represented it as possible, with a view to obtain the subscription, and did thereby obtain it, such conduct would be fraudulent, and the subscriptions so obtained be of no avail in law. But if they thought it possible to cross the river, and in the discharge of their duty honestly made-plans and estimates which were afterwards found erroneous, such error would not vitiate the contract, though it were now shown,, that if the canal had been constructed according to those plans, it. must have failed of its purpose. So, if there was a wilful misrepresentation of the estimated difference in the expense of the two-routes, in order to obtain the subscription, that would vitiate it, being an act of fraud; though a mere mistake in the estimates would not make void the contract. Further, if these public agents in their investigations became possessed of facts on which their decisions rested, which they refused to make known when inquired of, such withholding of information would be a fraud. But a mistaJce in the location of the line, or in making the estimates, although it induced one or both of the parties to take measures they otherwise-would not have taken, would not vitiate the contract. The information sought of the public officers was the result of their exami *693 nations and estimates. They were known to be men, and liable to err — they gave no guarantee of their accuracy; the public and individuals received their labors for what they thought them worth. Their integrity was looked to, not their perfect accuracy.
Willey moved for a new trial,
1. Because the verdict is against law.
2. Against evidence.
3. Because the writing was improperly admitted in evidence.
Willey and Pease then moved in arrest of judgment,
1. That no legal interest in the cause of action set forth in the second and third counts, is shown to be in the state.
2. That the legal interest in the contract disclosed in the second and third counts, is in the canal fund commissioners.
If, upon the whole, you find that their subscription paper was made by the defendant and delivered to the canal commissioners, *on the condition expressed on its face, that the canal should [$70 be located or made to the village of Cleveland, and the canal has been located and made accordingly, the plaintiff is entitled to a verdict for the amount of the subscription with interest from the time it fell due, unless it was obtained by fraud, or delivered as an escrow, or upon a collateral condition consistent with the instrument, which has not happened in either of these eases, the. defendant is entitled to your verdict.
Verdict for the plaintiff, $701 damages.
WRIGHT, J. The causes urged for a new trial may be summed up in one, viz.; that the court improperly admitted the subscription paper in evidence. The other causes assigned are open on the record, and will not now be considered. It is insisted the article admitted in evidence varies from that commented upon, in this, that it is described as given to the state, when, in truth, it is to the canal fund commissioners for the use of the state. The objection does not apply to the first count, which describes the contract in general terms, nor to the third, which sets it out in hec verba, and hence deduces a legal liability. It is not a variance to describe even a bill of exchange as signed by the defendant, though it appear to be signed by an agent: (1 Ch. P. 134). But the paper was, as is admitted, receivable under the third count. That overrules the motion for a new trial, because if it was evidence under either count, it was properly admitted, and its application was with the jury under the direction of the court. The motion is overruled.
Andrews and Tappan contra.
WRIGHT, J. The declaration in this case contains three counts: 1. On an undertaking to pay $500 in instalments to the state, in consideration that the Ohio canal should be located on the east side of the Cuyahoga river from the lower rapids to the village of Cleveland. It avers the location, and assigns the non payment as a breach.
671] *2. Is upon a written subscription to pay the state, &c., in consideration the canal was located, &c., which was delivered to the canal commissioners under authority of law, avers the location and non payment.
3. Is upon a subscription delivered to the canal commissioners, set out in hec verba, and avers the location and non payment.
By general law, the canal commissioners were created agents of the state, and empowered to receive donations in any form solely for the use of the state, conditioned upon particular locations, in order to aid the state in the structure of her canals.
By general law, the moneys obtained by donation, loans, and taxation for the canals, constituted a particular fund, called the canal fund, which was exclusively the property of the state.
By general law, a board of fund commissioners were created for the management of the canal fund for the state as its agents.
It is well settled law, that “public statutes and the facts they recite or state, must be noticed by the court without their being stated in the pleadings, and it will only be necessary to state these facts, which will appear to the court to be affected bjr the statute:” (1 Ch. Pl. 246; 1 Blk. C. 85, 6; 4 Maule and Sel. 542; 1 T. R. 45; Com. Dig. Pl. C. 76; Steph. Pl. 252.) This court in Bank, in 6 O. 142, determined it unnecessary to aver and prove, what is provided for by general statute. The court and the whole community is charged with a knowledge of the general laws of the land. All citizens are held responsible to a conformity with their provisions, both civilly and criminally; and ignorance of them is no excuse from contracts or crime. It is unnecessary to copy such laws into the pleadings; nay, it would be highly improper to do so, as the tendency would be to too great prolixity and much additional expense. The great end of pleading is brevity and certainty, and whatever attains to this, is legally sufficient. In some composition, it may be desirable to express by words all the circumstances bearing on the matter described, but to do so is not held a rule of good pleading. The general rule *695 is, that a contract may be declared on according to its legal effect: (1 Ch. Pl. 334; Steph. Pl. 432; 2 Saund. 97, n. 2; 10 Mass. 230; 10 John. 90;) and if not under seal, the principle seems established that the party for whose sole benefit it is evidently made, may sue thereon in his own name, although the engagement he not directly to or with him: (l Ch. Pl. 5; 8 Conn. 60.) The omission of words is wholly immaterial, where the nature of the contract is not changed by the omission, but the legal constitution must be the same, whether the words be in or out: (7 Cranch, 498.) This court *in this case (5 O. 61-65) revised the whole doctrine bear- [672 ing on contracts by public agents, and determined this contract to be with the state; and that the designation of the fund commissioners merely described the public agents to receive the money. The application of these rules and principles to the case at bar will sustain the declaration. The provisions of the general laws we are bound to notice, the existence of the board of commissioners is provided by law, as is their connection with the canal funds. They are public servants, known and acting as such.
No good would result from a change of the practice. It asserts nothing new; the same principles apply to our daily practice. We ■count upon goods sold to the defendant, and prove they were sold to the wife or servant, or sold by or to agents — this is held no variance. It is claimed this does not notify the defendant what is to be jDroved against him. Is it so ? He knows what by law may be proven, and if he doubts he may call for a bill of particulars. Under non assumpsit, a denial of the promise, we have admitted in this case evidence of fraud, and that the writing was delivered as an escrow; how could this be except under the principles I have laid down ? We are declaring no new law, as is supposed. The decisions of the English courts, of the Supreme Court of the United States, of the State courts of North Carolina, New York, of this court heretofore, when Judges Hitchcock and Brush were upon the bench, and in full Court in Bank in repeated examinations, are all to the same point. One would srtppose that the concurring opinions of a Blackstone and Mansfield, of a Parsons, Kent, Spencer, Marshall, would afford some slight evidence of the law; yet, though this court is so sustained, the whole subject has been argued as if new andi open, and it is urged, though no authority is produced, that we have •changed the law to suit this ease!
Judgment on the verdict.