## GEORGE A. BARNES & A. *v.* UNION M. F. I. CO.

The omission in an application to a mutual insurance company for insurance, to mention an existing policy in the same company, does not render the policy void, but the policy will be confirmed by the assent of the directors to a transfer of the policy, all the facts appearing on their records.

Notice of loss will not be rendered ineffectual by the omission to mention that the debt of the assignee, as mortgagee, was also secured on other property.

Where property insured is conveyed, and the policy is assigned with the assent of the directors of the company, an assessment made against the original assured, and notice to him, will not cause a suspension of the policy, in case of non-payment.   The assignee, after the assent of the directors, is the party entitled to notice.

Notice of loss given by the assignee, is sufficient in such case.

The agent, by whom an insurance is obtained in his own name for the benefit of another, may maintain an action upon it.

Where a promise is made to one sustaining the character of a trustee, he is the proper person to bring an action.

By the assent of the directors to an assignment of a policy to a mortgagee of the property, the assignee becomes a member of the company, and may sue in his own name, where the by-laws allow such assent to be given.

ASSUMPSIT, by the plaintiffs, as assignees of a policy of insurance, for $2000 on a dwelling house in Nashua.

A. W. Dickey, claiming the property, subject to a mortgage of $1400, applied on the 13th of May, 1851, to the defendants for insurance, and on the 17th of May, 1851, they issued to him a policy on the property, for $1500, for six years. June 14, 1851, this policy was assigned to A. and N. McKean, the mortgagees, who gave a new premium note; and this policy was not discharged till Oct. 4, 1856.

The application for the policy in suit was made, and the policy issued to A. and N. McKean, whose mortgage had been foreclosed in August previous, on the 15th of September, 1856. In the application, in answer to the question, "Is there any insurance on the property?" the answer was, "No." The charter of the company, which was part of the policy, contained a provision, "that if insurance on any house, &c., shall be and subsist in said company, or in any other company, &c., at the same time, the insurance made in and by this company, shall be deemed and become void, unless such double insurance subsist with the consent of the directors, signified by endorsement on the back of the policy, signed by the president and secretary."

The charter also contained a provision, "that when any property insured in this company, shall be in any way alienated, the policy thereupon shall be void, &c. Provided, however, that the alience, having the policy assigned to him, within thirty days from such alienation, may have the same ratified by the directors, and thereupon the assignee shall become liable to all the conditions, and entitled to all the benefits, of the policy, upon giving a new deposit note, or guaranteeing the payment of the note given by the assignee."

The company, in pursuance of the usual powers in their charter for that purpose, adopted by-laws. Among them Art. 16 provided, that "when the title of any property insured shall be changed by sale, mortgage, or otherwise, the policy shall thereupon be void and be surrendered to the directors to be cancelled; but if the grantee, or alienee have the policy assigned to him, he may, upon application to the directors, if they consent, within thirty days next after such alienation, on giving proper security, have the same ratified and continued in force for his benefit, with all the rights, and subject to all the liabilities, to which the original party was entitled and subjected. Provided, that such alienation shall not affect the rights of any person, to whom the policy shall be payable, or be assigned as collateral security, if such person shall have signed a premium note with the assured, or shall give such security as the directors require."

And by Art. 18. "Any mortgagee may insure his interest in any property in his own name, without reference to the mortgagor, in the same manner as insurance is effected on other property, provided the said mortgagee shall procure a certificate from the mortgagor, that said property is not insured in any other office."

A. and N. McKean re-conveyed the property insured to Dickey, on the 8th of September, 1860, and transferred to him the policy, he giving a new premium note. This policy was assigned by Dickey to the plaintiffs as trustees of a loan fund association, a partnership of many members, none of whom are named in the writ, as collateral security for

the payment of a debt, secured by a mortgage of this property, and the land on which it stood, and upon another house and land, and they gave a new premium note to the defendants. This assignment was made and assented to by the directors, Sept. 8, 1860.

The 12th Article of the by-laws provided, that "if the insured shall neglect for the space of ten days, when personally called on, to pay any premium or assessment upon either class of property, the risk of the company on the policy shall be suspended, till the same is paid; but if the insured shall refuse to pay any assessment, the directors may terminate the same, by giving notice thereof in writing, either personally or by mail, to the insured; provided such termination of the risk shall not affect the validity of the policy, or note, so far as respects past dues."

The property insured was destroyed by fire, Oct. 12, 1861, and notice of the loss was given by the plaintiffs to the defendants, Oct. 15, 1861. The notice did not state that their mortgage covered any other property, nor the value of the land on which the burned building stood, nor of the other property covered by the mortgage.

Assessments were made upon the policy in the name of A. and N. McKean, and the defendants' agent called on Dickey, who occupied the property insured, but, excepting a small sum, he neglected and refused to pay the assessments, more than three months before the fire. No assessment was made against the plaintiffs, nor were they notified, or called upon to pay any.

In reply to the plaintiffs' application for a settlement of the loss, made Jan. 20, 1862, the defendants informed them that Dickey, the holder of the policy, had not made a statement of loss in conformity to the charter, and that he had neglected to pay his assessments for a long time before the fire, though often applied to, by which the policy was suspended.

A nonsuit was ordered and the plaintiffs excepted.

*Fellows*, for the plaintiffs.

*Fowler & Chandler*, for the defendants.

BELL, C. J. The erroneous statement in the application did not render the policy void. The defect was not of that class which renders a policy absolutely and incurably void. Its utmost effect was to render it voidable at the election of the company. Till then it remained so far in force, as to be at all times capable of ratification or confirmation, and when confirmed, it was thenceforth valid, as if no defect had ever existed in it. The company must be taken to be aware of the error, and of all the facts connected with it, since the previous policy was in their own company. Their own records did or should show, when it was to terminate, and when it was in fact discharged. When the directors, then, in 1860, assented to the transfer to Dickey, and by him to the plaintiffs, they assented to them as assignments of a valid subsisting policy, by which they were bound. This was a complete ratification, and it is quite too late for them to raise objections to its validity founded on past transactions.

It has been repeatedly held, that if application for insurance is taken by an agent of an insurance company, and he knows the facts, the omission to state facts material to the risk, or an erroneous statement relative to such facts, without any fraudulent purpose, will not avoid the policy; the company will be charged with the knowledge of the agent. *Marshall v. Columbian Ins. Co.* 27 N. H. 157; *Campbell v. Merchants Ins. Co.*, 37 N. H. 35; *Clark v. Union Ins. Co.*, 40 N. H. 333. It is equally reasonable to charge them with notice of facts, which appear upon their own records, relating to the same parties and property, especially as at the time of the directors' assent to the transfers, the previous policy had been long discharged.

It is insisted that this policy was never so assigned to the plaintiffs that they became members of the company, liable for assessments, and entitled to maintain this action. In support of this position two points are urged: 1st, that a mortgage is not an alienation within the meaning of the charter and by-laws; and the assignment of a policy cannot be made to a mortgagee so as to make him a member of the company; and 2d, that the policy having been assigned by the McKeans to Dickey, the power of assignment for this purpose was exhausted.

The effect of the assignment and assent of the directors, depends upon the provisions of the charter and by-laws, stated in the case. Under these clauses it has been held, and it is to be regarded as settled, that a mortgage is not an alienation, which will cause a forfeiture. *Shepherd v. Union Ins. Co.*, 38 N. H., 232; *Folsom v. Belknap Ins. Co.*, 30 N. H. 231; *Rollins v. Columbian Ins. Co.*, 25 N. H. 200; and numerous cases elsewhere.

At common law an assignee of a contract, negotiable instruments excepted, can maintain no action upon it, excepting in the name of his assignor, the original contracting party. And this rule is held to apply to policies of insurance, though in terms made to the party insuring and his assigns. *Rollins v. Columbian Ins. Co.*, 25 N. H. 204. But if the debtor make a promise to the assignee to pay the debt to him, the assignee may maintain an action in his own name. *Wiggin v. Damrell.* 4 N. H. 75; *Currier v. Hodgdon*, 3 N. H. 82; *Edson v. Fuller*, 23 N. H. 191; *Thompson v. Emery*, 27 N. H. 273; *Shepherd v. Union Ins. Co.*, 38 N. H. 238.

In the case of mutual insurance companies it has, however, been held, that, in the absence of provisions in the charter, or by-laws, or policy to that effect, an assignee cannot recover in his own name, though the company assent to the assignment. *Folsom v. Belknap Ins. Co.*, 30 N. H. 241; *Jessel v. Williamsburgh Ins. Co.*, 3 Hill 88; *Shepherd v. Union Ins. Co.*, 38 N. H. 232; *Conover v. Mutual Ins. Co.*, 3 Denio 254; *Rollins v. Columbian Ins. Co.*, 25 N. H., 205.

This is manifestly an exception to the general rule of the law on the subject, founded on the peculiar nature of the contract, and the limited powers of such companies, and is not adopted in some of the States. *Phillips v. Merrimack Ins. Co.*, 10 Cush. 350; *Bennett v. Union Ins. Co.*, 7 Cush. 175; *Lowell v. Middlesex Ins. Co.*, 8 Cush. 127; *Loring v. Manufacturers Ins. Co.*, 8 Gray 28.

It is with a similar view of the nature of the contract, that it is held that an assignee, to whom a policy has been confirmed by the directors, cannot maintain an action upon the policy, for any loss after the assignment, if he has no conveyance or assignment of the property insured. *Rollins* v. *Columbian Ins. Co.*, 25 N. H. 200 ; *Peabody* v. *Washington Ins. Co.*, 20 Barb. 339.

But there is no doubt of the power of a mutual insurance company, by a by-law for that purpose, to provide that a mortgagee, to whom a policy is assigned as collateral security, may have the policy ratified to him by the assent of the directors, and that he shall thenceforth have all the rights of the assured.    It was so held expressly in *Rollins* v. *Columbian Ins. Co.*, 25 N. H. 201.    Under such a by-law, the mortgagee and assignee, having the policy ratified to him, may bring a suit in his own name, and is to be regarded and treated in all respects as the party assured. *Kingsley* v. *New England Ins. Co.*, 8 Cush. 393 ; *Phillips* v. *Merrimack Ins. Co.*, 10 Cush. 350 ; *Rollins* v. *Columbian Ins. Co.*, *ub. sup. ; Flannagan* v. *Cambden Ins. Co.*, 1 Dutch. 506.

The case of *Rollins* v. *Columbian Ins. Co.*, was, in the facts involved in this question, much like the present.    Like this the charter made provision only for cases of alienation, while a by-law declared that a mortgagee might have the policy assigned to him, ratified to him, with all the rights of the original assured.    The plaintiff had a mortgage, and an assignment of the policy as collateral, which was assented to in the usual form by the directors.    It was held, as we hold here, that the mortgage was not an alienation within the charter to cause a forfeiture ; but that the by-law was well authorized and valid, and that the mortgagee, by the assent of the directors, became the party assured, the member of the company, and entitled to maintain the action in his own name.

Such a deliberate decision will not be overruled incidentally.    It must stand until the court, upon a discussion of the very question involved in it, shall find cause to overrule it.    In the case of *Shepherd* v. *Union Ins. Co.*, 38 N. H. 237, there was no occasion to consider any of these questions, no disposition to question the propriety of the decision, or to cast a doubt upon it.    On the contrary, it was cited much at length, and its doctrines approved and relied upon.    In the case of *Shepherd* v. *Union Ins. Co.*, the plaintiff was the original assured.    He afterwards assigned his policy to the Savings Bank in Concord, as collateral security for a note which he owed them, but the assignment of the policy had not been assented to nor ratified by the directors.    A loss arose, notices were given, and suits brought both by Shepherd and the Savings Bank.    It was shown that the property insured was subsequently mortgaged to Caldwell, of which no notice was given to the company. It was held in conformity to Rollins' case, that the Savings Bank could not maintain a suit in their own name, but the action must be in the name of the original assured ; and that a mortgage was not an alienation within that clause of the charter which provided that if the property should be in any way alienated the policy should be void.    It was contended that under the 16th section of the by-laws,—the same recited in this case,—when the title of any property insured shall be changed by

sale, mortgage, or otherwise, the policy shall thereupon be void, and that the mortgage to Caldwell defeated the policy. It was admitted that if the by-law had provided that if the property insured should be mortgaged the policy should be void, the parties would be bound; but it was held that the language used did not naturally or necessarily import that a mortgage would be such change of title until after a foreclosure. There is no principle better settled than that conditions, that go to destroy or divest estates or rights, are to be strictly construed. *Lazarus* v. *Commonwealth*, &c., 5 Pick. 76; *Emerson* v. *Simpson*, 43 N. H. 475. It by no means follows, that, because a mortgage before foreclosure is not a change of title, which under the 16th by-law will avoid the policy, the assignment of the policy to a mortgagee may not be assented to and ratified by the company, so as to give the assignee the rights of the original assured. It is the completed change of title by mortgage and foreclosure, which, if not ratified, avoids the policy. The execution of a mortgage is but an inchoate change of title, or alienation, the first step often to that result, but the execution of the mortgage makes the mortgagee a grantee to whom the policy may be ratified. A liberal construction is to be given to the by-law, so far as it tends to allow the parties to shape their contracts and agreements according to their mutual understanding, of which in this case there can be no doubt.

There would be little reason for coming to a different conclusion, since the by-laws expressly allow an insurance to be made by the mortgagee independent of the mortgagor, which proves that the company do not object to insuring the interest of a mortgagee; and where property is mortgaged, and the existing policy is assigned as collateral, one of the parties must in the nature of things be trustee for the other, for whatever he may recover of the sum insured above what is due to himself; and it must be a matter of indifference to the company which of the parties is the trustee and member of the company; while the security of the mortgagee requires that he should be the party, by and to whom the notices should be given. The policy would be poor security if it was liable to be defeated by the acts or neglects of the mortgagor, whose interest may be merely nominal.

The policy in suit was assigned by Dickey to the plaintiffs, as collateral security for his mortgage of the same date, for $4,000 on this property, and on another house and lot. It is objected that the plaintiffs' notice of the burning of the property insured is insufficient, because it did not state the fact that their mortgage covered other property, nor state the value of the land on which the building stood, which is said to be $500. The value of the other lot is stated to be $200, and the building on it was insured for $1,500.

The by-laws require an account on oath of the property lost or damaged, and the value of it at the time of the loss, whether the insured was sole owner, whether it was encumbered by mortgage, or insured in any other office, and the cause of the fire, as far as known; but we have observed nothing in the charter or by-laws, which requires the statement here insisted on. And there seems very little color for any sug-

gestion of fraud or unfairness in the omission.    The amount insured was due to the plaintiffs, or if their mortgage was in part paid, to them and Dickey, and they being the parties entitled to sue as members of the company, they must recover the whole loss and must hold whatever was not due to themselves, as trustees for Dickey.    The defendants had no interest in any question relative to the state of the mortgage debt, or the sufficiency of the security.

One assessment was made against A. and N. McKean before the assignment, and one after.    Dickey, who occupied and had charge of the property, was called upon and neglected to pay these assessments, more than three months before the fire.    No assessment was made against the plaintiffs, nor were they ever called upon to pay, or notified of, any assessment, and no notice to the McKeans was shown, or request to them to pay.    The claim is, that by the 12th article of the by-laws the risk of the company on the policy became suspended by the neglect of Dickey to pay the assessments.    The 16th by-law provides that the grantee, or alienee by mortgage, or otherwise, of the property insured, having the policy assigned to him, by the assent of the directors, on giving new security shall have all the rights, and be subject to all the liabilities to which the original party was subject or entitled.

It seems clearly the right of the assured that his policy should not be suspended by non-payment of an assessment until he was notified of it, and payment requested.    The condition of an assignee, to whom the policy was confirmed by the directors, would be essentially different and worse than that of the original assured, if the risk of the company could be terminated, and his security destroyed by an assessment against his assignor, and notice given to him when he may have little or no interest, and a demand of payment of him, of which the assignee can have no knowledge.    A construction like this would defeat the whole object of the assignment, and seems to us entirely inadmissible.

As to any past failures to pay assessments before the assignment, the company by their assent to the assignment, waive the provision that the policy shall be suspended if the assessments are not paid.    *Hale* v. *Union Ins. Co.*, 32 N. H. 295.

It is insisted that notice of the loss must be given by the original assured, or rather by the mortgagor, his assignee.    This stands on the same ground as that relative to the suspension of the risk.    To have "all the rights of the original party" the notice by the assignee must be as effectual as that of the assured. •   And we understand it to be settled that the assignment of a policy with the assent of the insurer creates new and mutual relations and rights between the assignee and the insurer, which cannot afterwards be changed by any acts or neglects of the original insured, a third person, over which the injured party may have no control.   *Tilton* v. *Kingston Ins. Co.*, 1 Seld. 405 ; *Traders' Ins. Co.* v. *Robert*, 9 Wend. 404 ; *Rollins* v. *Columbian Ins. Co.*, 25 N. H. 205.

It is insisted that the debt which this property and policy were assigned to secure was the property of the Loan Fund Association, and therefore the action, if it can be maintained at all, must be prosecuted in the names of the members of the association, and not by the plaintiffs.

But we think this position not well founded, because "it is usual for actions on policies of insurance to be brought in the name of the agent, or broker, instead of that of the principal. This is founded upon the promise being made to the agent." Paley on Agency 362, or as the same rule is expressed by Story, (Agency sec. 394,) "where a policy of insurance is procured to be underwritten by an agent in his own name, for the benefit of a particular person, or for whom it may concern, the agent may sue thereon in his own name for any loss occurring under the policy, for he is treated as a direct party to the contract, and the underwriter undertakes to pay the loss to him," ibid, sec. 109, 161 ; 2 Stor. Eq. Jur. sec. 400 ; *Usparicha* v. *Noble*, 13 East. 332 ; *Sargent* v. *Morris*, 3 B. & Ald. 283 ; *Wolf* v. *Horncastle*, 1 B. & P. 323 ; *Ward* v. *Wood*, 13 Mass. 339 ; *Davis* v. *Boardman*, 12 Mass. 80 ; *Jefferson Ins. Co.* v. *Cotheal*, 7 Wend. 73 ; *Parker* v. *Beasley*, 2 M. & S. 426 ; *Hagedorn* v. *Oliverson*, 2 M. & S. 485 ; *Protection Ins. Co.* v. *Wilson*, 6 Ohio St. 553 ; *Cobb* v. *New England Ins. Co.*, 6 Gray 192. And this principle was adopted and applied in the case of a policy against fire, in *Goodall* v. *New England Ins. Co.*, 25 N. H. 169.

And because where a promise is made to one sustaining the character of a trustee, he and not the *cestui que trust*, is the proper person to bring the action upon it, *Treat* v. *Stanton*, 14 Conn. 445, or as it was held in *Pierce* v. *Robie*, 39 Me. (4 Heath) 205, where the funds of a voluntary association are put under the control and management of trustees, and are loaned to some of its members, an action may be maintained in the name of the trustees. In the present case the plaintiffs are the trustees of such a voluntary association. The real estate, without the transfer of which, the assignment of the policy would have conferred no valuable rights, was mortgaged to the plaintiffs, as trustees, the legal interest was in them, and the contract made by the consent of the directors, was with them. They were made thereby the members of the insurance company, and not the whole body of the members of the Loan Fund Association, and they were in consequence the only parties entitled to bring an action in case of loss. *Blanchard* v. *Atlantic Ins. Co.*, 33 N. H. 9 ; *Nevins* v. *Rockingham Ins. Co.*, 25 N. H. 22.

*Nonsuit set aside.*