### TREAT *against* STANTON.

An action at law must be brought by the person who has the legal interest in the cause of action.

The parties to a contract are the persons in whom the legal interest in the subject of it is deemed to be vested, and who therefore must be the parties to the action which is instituted for the purpose of enforcing it, or recovering damages for its violation.

Where it is not expressly stated to whom the promise is made, the general principle is, that it is deemed to be made to the person from whom the consideration of the promise proceeded.

Where a promise is made to one sustaining the character of a *trustee,* he, and not the *cestuy que trust,* or person ultimately interested, is the proper person to bring an action upon it.

The rule that where one person makes a promise to another, for the benefit of a third, the latter is the proper party to maintain an action upon it, is confined to those cases where the third person for whose benefit the promise was made, had the *sole* and *exclusive* beneficial interest in the subject of the promise, and was therefore deemed to be invested with the legal interest therein.

Therefore, where A gave, by her last will, to five of her nieces the sum of 400 dollars each, to be paid to them when they should become of full age, with a proviso, that in case either of them should die without heirs, her share should be divided among the survivors, and that the sum of 100 dollars out of each legacy should be expended, at the discretion of her executor, in the nurture and education of said nieces, if, in his opinion, necessary ; with power to her executor to invest said sum in stocks, or to loan it on good security bearing interest ; A appointed B her executor ; after the testator's death, B placed the amount of such legacies in the hands of C, who thereupon gave to B a writing, acknowledging the receipt thereof as legacies so left to said nieces, and agreeing to retain the same in his hands until they should become of full age,

(*a*) For the reason, the reporter believes, that during a part of the argument, he was not in court.

*Windham,*
July, 1841.

Treat
*v.*
Stanton.

(except such part thereof, not exceeding one fourth, as *B* should want to expend for their education,) and to pay the same, with interest, to said nieces, by an order from *B*, when they should become of full age; in an action brought by *B* on such writing, against *C*, to recover the moneys mentioned therein, it was held, that *B* was the proper person to bring such action.

In such case, it was also held, 1. that the "*order*" mentioned in the writing given by *C*, did not import exclusively a written instrument, but any express direction by *B*, though merely verbal, was a sufficient compliance with the agreement; 2. that in the computation of interest on the money in *C's* hands, on which sundry payments had been made at different times, the rule established by the superior court in 1784, was not an erroneous guide.

THIS was an action of *assumpsit*, brought by *Amos Treat*, as executor of *Dolly Stanton*, against *John Stanton*, executor of *Adam Stanton*, to recover certain moneys which the defendant's testator had received from the plaintiff.

The cause was tried at *Brooklyn, October* term, 1840, before *Church*, J.

In *July*, 1816, *Dolly Stanton* made her will, containing the following provisions: " I give and bequeath unto my nieces, *Rebecca Stanton, Mary Stanton, Phebe Stanton, Eunice Stanton,* and *Anne Stanton,* daughters of my brother, *George Stanton,* the sum of 400 dollars to each of them; and in case of the decease of either of them without heirs, my will is, their legacies shall be equally divided between the surviving sisters; provided, however, that the sum of 100 dollars out of each of said legacies shall be expended at the discretion of my executor herein after named, in the nurture and education of my said nieces, if, in his opinion, it is necessary." " And in case any of the aforesaid persons, to whom I have bequeathed legacies, shall, at my decease, be minors, under age, then my will is, that my executor shall have the care of such minors' legacies until they become of age, and shall then pay the same over to them. And said executor shall be allowed to place said legacies in such situations, either by investing the amount in the *United States Bank,* or in other bank Stock, or turnpike stock, or put the legacies out on interest, with good security, or some other way, so that said minors, when they come of age, may receive their legacies, with the accumulations of interest, together with as much compound interest as my said executor may be able to obtain on said moneys."

The testator appointed the plaintiff her executor.

*Adam Stanton*, the defendant's testator, afterwards signed and delivered to the plaintiff a writing, in the following words: — " Received, *Killingworth, September* 9th, 1819, of *Amos Treat* of *Voluntown*, executor on the estate of *Dolly Stanton*, deceased, the sum of 2195 dollars, 76 cents, which sum is left as legacies to the five children of *George Stanton* of *Paris*, state of *New-York*, by the will of *Dolly Stanton*, and which money I am, by agreement with said *Treat*, to retain in my hands until the said children become of lawful age to receive it, except such part (not exceeding one quarter of it,) which said *Treat* may want before they become of age, to lay out for their education. The above money I promise to pay to said children, when they become of age, by an order from said *Treat*, except such part as I may have previously paid to said *Treat*, to lay out for their education, together with the lawful interest from this date. Of the above sum, 507 dollars, 46 cents, is received in notes on *Abel Kimberly*, which I am to collect, if I can, and when collected, to account for, as above ; but if all, or any part of said notes, should be paid, then I am not to account for such part thereof as remains unpaid. Witness my hand.        [Signed.]                *Adam Stanton.*"

On this receipt there were sundry indorsements of money, paid at different times.

There was no proof that the plaintiff had ever given to *Adam Stanton* in his life time, or to the defendant since his death, any written order to pay the money specified in the receipt to any of the children mentioned therein.

Upon this state of the case, the defendant claimed, that the plaintiff was not entitled to recover in this action ; 1st, because the legal right existing under the receipt, was only in the children of *George Stanton;* and consequently, the plaintiff had no right of action : 2dly, because the plaintiff had not proved, that any order had ever been given by the plaintiff to pay said money to such children ; and the defendant prayed the court so to instruct the jury. The court did not so instruct the jury, but remarked to them, on the second point, that to entitle the plaintiff to a recovery, it was incumbent on him to show, that he had ordered and directed *Adam Stanton* in his life-time, or the defendant since his death, to pay said money to such children; but that it was not necessary that such order or direction should have been in writing : that if they were

*Windham,*
*July, 1841.*

Treat
*v.*
Stanton.

satisfied from the evidence in the cause, that *Adam Stanton,* or the defendant as his executor, had been, by the plaintiff, either by writing or otherwise, ordered, directed, or requested to pay said money to said children after they became of age, this objection of the defendant ought not to prevail.

The defendant also claimed, that if the plaintiff was entitled to recover, the interest was to be computed upon the same principle as if there had been five notes given by *Adam Stanton,* each for one fifth part of the amount of the receipt, payable to each legatee upon his arriving at full age, and not according to the rule of the superior court established in *March,* 1784 : and the defendant prayed the court so to instruct the jury.   The court did not so instruct the jury.

They returned a verdict in favour of the plaintiff ; and the defendant moved for a new trial for a misdirection.

*Welch* and *Rockwell,* in support of the motion, contended, 1. That the plaintiff can sustain no suit, as executor, on the writing declared on, against the executor of *Adam Stanton.* There are three classes of cases, in which it has been held, that where a contract has been made between two persons, for the benefit of a third, the parties to the contract may bring the action, and not the party beneficially interested. First, in the case of a deed *inter partes,* and perhaps any sealed instrument, where, on account of the solemnity of sealed instruments, this rule has been adopted.   Secondly, in the case of factors and other bailees with an interest, who, on account of that interest, and their duties, liens, and liabilities, and from considerations of public policy, are authorised to sue in their own names.   Thirdly, in other simple contracts, where the consideration proceeds from the party to the contract, and not from the person beneficially interested.

But a parol promise, made to one for the benefit of another, may be enforced by him for whose benefit it is made. *Dutton & ux.* v. *Poole,* 2 *Lev.* 210.   *Schemerhorn* v. *Vanderheyden,* 1 *Johns. Rep.* 139.   See *Brown* v. *Morris,* 2 *Taunt.* 381, 2.   *Martyn* v. *Hind, Cowp.* 443.   3 *Bos. & Pul.* 149. n. (*a.*)   *Rippon* v. *Norton, Cro. Eliz.* 849. 881.   *Levett* v. *Hawes, Cro. Eliz.* 619. 652.   *Sadler* v. *Payne, Saville,* 23. *Marchington* v. *Vernon,* cited 1 *Bos. & Pul.* 101. n. (*b.*) *per Buller,* J.   *Felton* v. *Dickinson,* 10 *Mass. Rep.* 287.   *Arnold*

& al. v. *Lyman*, 17 *Mass. Rep.* 400. *Lawrason* v. *Mason*, 3 *Cranch*, 495. *per Marshall*, Ch. J. In these cases, the decision is, that the party beneficially interested *may* sue ; denying, in most of them, the right of the person who is a party to the contract, to sue ; in all of them, the consideration proceeded, either wholly or in part, from the party making the contract. In many of them, it is apparent, that only one can sue. When a person from whom the consideration of a contract does not proceed, executes it for the benefit of a third person, who is beneficially interested, as well in the consideration as in the contract, the person so making the contract, is in fact merely *an agent.* Such is the plaintiff, in the present case. *Pigott* v. *Thompson*, 3 *Bos. & Pul.* 147. *Gunn* v. *Cantine*, 10 *Johns. Rep.* 387. *Vischer* v. *Yates*, 11 *Johns. Rep.* 23. Duke of *Norfolk* v. *Worthy*, 1 *Campb.* 337. *Buckbee* v. *Brown*, 21 *Wend.* 110.

2. That the expression in the receipt " by an order from said *Treat*," imports a *written* order ; and until such order was given, no right of action had accrued.

3. That the charge was erroneous or defective in relation to interest. In the first place, no interest was demandable, or chargeable, until the principal became due. When a sum of money, by the terms of a note or other contract, is payable at a future day, the interest cannot be collected until the note is due, unless it is expressly made payable at an earlier period. *Greenleaf* v. *Kellogg*, 2 *Mass. Rep.* 568. per *Parsons*, Ch. J. *Tucker* v. *Randall*, 2 *Mass. Rep.* 284. *Cooley* v. *Rose*, 3 *Mass. Rep.* 221. *Johnston* v. *Brannan*, 5 *Johns. Rep.* 268. *Tillotson* v. *Preston*, 3 *Johns. Rep.* 229. *Miles* v. *Wister*, 5 *Binn. R.* 477. *Williams* v. *Houghtaling* & al. 3 *Cowen*, 86. Secondly, the rule laid down in *Kirby's Reports*, 49. is incorrect in principle, and ought to be revised.

*Strong*, contra, contended, 1. That the right to sue for the money in question, was in the present plaintiff. He was not the mere agent of the testator's nieces, but he was her executor and their trustee. In both capacities, he had, or might have, duties to perform affecting this fund. It might be necessary for him as executor to resort to it, to meet claims against the estate ; and if so, could he not recover it ? He was authorized, by the will, to expend a part of the money, at his discre-

tion, in the nurture and education of the children ; and provision was made for this exigency, in the contract with *Adam Stanton.* Surely, it was not according to the nature of the trust, that the plaintiff should place this fund in the hands of an individual, and then have nothing further to do with it. Was he no longer accountable ?  Could the guardian of these children controul the fund, while it was in the plaintiff's hands, and take it from him ?  In *Dutton* v. *Poole,* and other cases cited by the defendant's counsel, the person to whom the promise was made, was not the *trustee* of those beneficially interested: he had no legal interest, and was subject to no liability or accountability.  This distinction runs through all the cases.

2. That any express direction from the plaintiff to *Stanton* to pay the money, whether written or verbal, was a sufficient " order" within the meaning of the receipt.

3. That the charge was unexceptionable as to the computation of interest.  It made no difference whether the computation was made upon the whole fund undivided, or upon all the parts, taken separately, of which it was composed.  In either case, the payment must be applied first to the interest which has accrued ; otherwise the fund may be extinguished, by payment of the interest only.  The rule of 1784 embraces this principle.

But in this case, it does not appear from the motion *how* the computation was made.  *Non constat* that the defendant has suffered for want of such a direction as he asked.

Storrs, J.  *Dolly Stanton,* the plaintiff's testator, having, by her last will, among other bequests, given to five of her neices the sum of four hundred dollars each, to be paid to them when they should arrive at full age, with a proviso, that in case either of them died without heirs, her share should be divided among the survivors, and that the sum of one hundred dollars out of each of said legacies should be expended, at the discretion of her executor, in the nurture and education of said neices, if, in his opinion, necessary, with power to said executor to invest said sum in stocks, or loan the same on good security bearing interest ; the plaintiff placed the amount of said legacies in the hands of the defendant's testator, who

thereupon executed to the plaintiff the instrument in writing on which this action is brought, acknowledging the receipt thereof, and expressing that the same was so left to said neices, and agreeing to retain the same in his hands until said neices should arrive at full age, (except such part thereof, not exceeding one fourth, as the plaintiff should want to expend for their education,) and to pay the same with interest to said neices, by an order from the plaintiff, when they should become of age.

*Windham,*
July, 1841.
———
Treat
*v*
Stanton.

The first question is, whether the plaintiff is the proper person to bring a suit on this agreement.

It is a general principle, applicable to all actions at law, that they must be brought by the person whose legal rights have been affected, or, in other words, who has the legal interest in the cause of action; (1 *Chitt. Pl.* 1.) since it is of legal rights alone that courts of law take cognizance, and that only in favour of those who are recognized as having those rights. In regard to contracts in particular, the general rule is correctly laid down by *Chitty*, in his treatise on *Pleading*, (*p.* 2.) where he says, " In general, the action on a contract, whether express or implied, or whether by parol, or under seal, or of record, must be brought in the name of the party in whom the legal interest in such contract was vested." And the parties to a contract are the persons in whom the legal interest in the subject of it is deemed to be vested, and who therefore must be the parties to the action which *is* instituted for the purpose of enforcing it, or recovering damages for its violation. Not that the person to whom the promise is nominally made, is always to be considered as the real party to the contract; for if he is acting merely as an agent of another, or the promise is made to him as such, his principal is the person to whom the promise is deemed to be made, and therefore is the real party to the contract. If, however, such nominal promisee is an agent, and has a beneficial interest in the performance of the contract, or a special property in the subject matter of the agreement, then the legal interest and right of action is in him. 8 *Conn. Rep.* 60. 1 *Chitt. Pl.* 7. It is not, in every case, however, that it is stated, in express terms, to whom the promise is made. In such case, the general principle is, that it is deemed to be made to the person from whom the consideration for the promise proceeded,

Applying these familiar principles to the contract in question, there would seem to be no difficulty in determining the point which we are now considering, unless indeed some exception can be shewn within which it is embraced. Although it is not in this contract expressly stated to whom the promise is made, yet it appears, that the money, which constituted the consideration for the promise of the defendant's testator, was received by him of the plaintiff; and also, that it was money, the legal title to which was in the plaintiff. He, therefore, is to be considered the person to whom the promise is made, and the party to the contract in whom is vested the legal interest in it. Hence it results, that the alleged violation of it is an injury to his legal rights, for which he is the proper person to bring this suit.

The defendant, however, insists, that the case is within a rule which creates an exception to the foregoing principles, that where one person makes a promise to another for the benefit of a third, the latter is the proper party to maintain an action upon it; and therefore claims, that the legatees, and not the plaintiff, ought to have brought this suit. The principle is indeed thus laid down, in several cases of actions on simple contracts; and we are not disposed to question its correctness as applicable to those cases. It is, however, so far from being a universal rule, that it is quite limited in its application, and is true only in a qualified sense; and although the cases decided under it have been sometimes spoken of as exceptions to the elementary principles which have been mentioned, there is no evidence that the courts have intended, in that class of cases, to depart in the least from those principles. It will be seen, by an examination of the cases referred to, that the principle is confined to those cases, where the third person, for whose benefit the promise was made, had the *sole* and *exclusive* interest in the subject of the promise, and the person to whom the promise was ostensibly made, for the benefit of such third person, being wholly destitute of interest, might more properly be considered an agent for such third person, than a principal in the transaction, and the person thus exclusively interested, therefore, the real promisee, rather than the person to whom the promise was made on his behalf. The rule is laid down with more precision and accuracy, by *Chitty,* where he says, that "the party, for

whose *sole* benefit it is evidently made, may sue thereon in his own name, although the engagement be not directly to or with him." 1 *Chitt. Pl.* 4. It is very plain, that the courts have not intended to relax, in any degree, the rule that a legal interest is requisite in the plaintiff. They only invest the party who is solely benefited by the promise, with that legal interest, and thus consider him as the real party to the contract. It is upon this ground that these cases are, for the most part, vindicated and approved.

In *Dutton* v. *Poole,* which is the leading case on this subject, (reported in 2 *Lev.* 210. and also in *T. Raym.* 302.) the father of the plaintiff's wife being seised of a wood, which he intended to sell to raise fortunes for younger children, the defendant, being his heir, in consideration that he would forbear to sell it, promised to pay his daughter, the plaintiff's wife, 1000*l.* for which the action was brought and sustained. It is stated, that some stress was laid upon the nearness of relationship between the plaintiff's wife and her father, to whom the promise was made; and Mr. *Hammond,* in his treatise on *Parties to Actions,* considers that the father must, in that case, have been deemed to have furnished the consideration, *and acted as his daughter's agent.*

In *Martyn* v. *Hind, Cowp.* 437. the defendant, being rector of a parish church, directed a certificate to the bishop, declaring that he had nominated and appointed the plaintiff to the office of curate of said church, and promising to allow him a yearly sum of fifty guineas for his maintainance in the same. It was objected, by the defendant, that this was a promise to, and contract with the bishop to indemnify him from maintaining the plaintiff, and that the action should have been brought by the bishop. It was however decided, that it was properly brought by the curate. Lord *Mansfield,* in giving the opinion of the court, remarks and repeats, that the certificate is no promise to, or contract with the bishop, but merely information to him of the fact of the nomination and appointment, and that the contract is *with the curate*; and from the manner in which he notices the case of *Dutton* v. *Poole,* it is obvious that he considered the plaintiff in that case to have been in law the promisee.

In *Schemerhorn* v. *Vanderheyden,* 1 *Johns. Rep.* 139. the defendant, in consideration of an assignment, by his father,

of his property, promised to purchase for his sister a cherry desk ; and on the authority of *Dutton* v. *Poole,* it was held, that it was a promise to the sister, considering, undoubtedly, that she, and not her father, was the real promisee, and he only her agent in the transaction.

In *Arnold* & al. v. *Lyman,* 17 *Mass. Rep.* 400. where *A,* a debtor of *B,* conveys property to *C,* who, in consideration thereof, promises to pay certain debts of *A,* and particularly that which he owes to *B* ; it was held, that *C* was liable to *B* for the amount of *A*'s debt to him, in an action of *assumpsit.* The court say : " We think that the promise may be legally considered as made to the several creditors, whose debts the defendant undertook to pay, if they chose to avail themselves of his engagement.   The promise was to pay certain particular debts ; and there seems to be no reason why it should not be treated as a promise to the creditors."

In *The Company of Felt-makers* v. *Davis,* 1 *B. & P.* 98. 102.   *Erye,* Ch. J. says : " As to the case put at the bar of a promise to *A,* for the benefit of *B,* and an action brought by *B,* there the promise must be laid as being *made to B,* and the promise actually made to *A* may be given in evidence to support the declaration."   And in *Pigott* v. *Thompson,* 3 *B. & P.* 149. Lord *Alvanley* expresses the opinion, that if *A* let land to *B,* in consideration of which the latter promises to pay the rent to *C, C* may maintain an action on that promise.   The reason which he gives, is, that *C* would be only a trustee for *A ;* thus placing it on the ground that *C* is to be deemed to be the real promisee, and so having the legal interest.

Without going into a more particular examination of the cases of this description, which have been referred to in the argument, it will be found, that they have proceded, substantially, on the ground that the sole and exclusive beneficial interest in the contract is in the person who has been allowed to bring the suit, and that the nominal promisee is only the person through whom the contract was made.   No case has been cited, nor is it believed that any can be found, where, on a promise made to one sustaining the character of a trustee, the *cestuy que trust,* or person ultimately interested, has been permitted to bring an action upon it.   In such case, the obligation and legal responsibility is exclusively to the

trustee, and must be enforced by him in a court of law, as remarked by *Chitty* : " The courts of law will not, in general, notice mere *equitable* rights, as contradistinguished from the strict *legal* title and interest, so as to invest the equitable or merely beneficial claimant with the ability to adopt legal proceedings in his own name ; although the equitable right embrace the most extensive, or even the exclusive, interest in the *benefit* to be derived from the contract or subject matter of litigation.    This rule could not be disregarded, without destroying the fundamental distinction between courts of *law* and courts of *equity*, with regard to the remedy peculiar to each jurisdiction.  If the *cestuy que trust* were permitted to sue at law, in his own name, the benefits and protection intended to result from the intervention of a trustee, clothed with a legal title, might be lost, and the advantages, arising from giving courts of equity exclusive controul over matters of trust, would be defeated.   Besides, it would be impossible, consistently with the common principles of jurisprudence, to exclude the power of the trustee to sue in respect of his legal right ; and it would be highly mischievous and unjust to permit the defendant to be harrassed by two actions upon the same contract or transaction.  The *right of action at law* has, therefore, been wisely vested solely in the party having the strict *legal* title and interest, in exclusion of the mere equitable claim."   1 *Chitt. Pl.* 2.

In the present case, the plaintiff, as executor, sustained the character of a trustee, not only for the legatees, but also for the creditors of his testatrix, and had the legal title to the money which formed the consideration for the defendant's promise.  For the faithful performance of the trust, he and his sureties are responsible on the bond given to the judge of probate ; and it is to that bond that those interested are to resort, if he fails in his duty.   The money due to him from the defendant on this contract, forms a part of the trust fund with which he is to discharge his obligations as such executor and trustee.   It is just and necessary, therefore, that he should have the controul of that fund, and the legal means of obtaining and protecting it.   The trust is a personal one, confided to him by the testatrix, of which it was neither intended that he should, nor is it in his power, to divest himself.  He has not, in our opinion, attempted to do so.

He has, in pursuance of the will, invested this portion of the money of his testatrix, with a view only of guarding it so as to enable himself to fulfil the terms of that instrument.  For this purpose it was necessary that he should retain the entire controul of it, without any interference in any form, either by the legatees or any other person ; and it is most evident, that he intended to do so ; for, by the very terms of the agreement, the defendant's testator was to pay over the money *on the order of the plaintiff*.  In this loan to *Stanton, Treat* acted, not as the agent of the legatees, but on his own behalf.  The legatees were minors, at the time of making the contract, and could not legally exercise any controul over the subject.  They had no power over or interest in the money, and could impart none to others.  *Treat* acted not by their authority, but by that of the testator, given in the will.  Indeed, it was wholly uncertain whether any of these legatees would ever have any title to this money, or to what extent ; since by the will, it will be perceived, that contingencies might have occurred, which would have varied the amount to which they would be entitled, or indeed deprived them of it altogether.  It is also obvious, that claims might exist against the estate, which would absorb the whole estate of the testatrix in the plaintiff's hands.  But if the claim of the defendant is correct, the obligation of the plaintiff, as executor, would continue, and he be deprived of the means placed in his hands to discharge them.  An account of his administration is, moreover, to be rendered, and settled, by the court of probate ; until which it is uncertain what will finally remain for distribution under the will.  To sustain the claim of the defendant, therefore, that the legatees are entitled to recover these moneys from the defendant, would be productive of the most glaring injustice, thwart the manifest intention of the testatrix, and of the parties to the agreement, and introduce a novel principle, which would be attended, in the management of trusts, with the utmost confusion and inconvenience.

The defendant also claims, that, in order to subject him under the agreement in question, it was necessary for the plaintiff to prove, that he had given a written order to *Stanton* to pay the money to the legatees.  We think that the word *order* was not used in the contract in any technical or

artificial sense, and that any express direction by the plaintiff, although merely verbal, was a sufficient compliance with the terms and intention of the contract, and imposed on *Stanton* the duty of paying over the money.

*Windham,*
*July, 1841.*

Treat
*v.*
Stanton.

With respect to the claim made by the defendant as to the mode of computing interest, there are not sufficient facts in the case to shew that he has not had the benefit of the rule for which he contends. However that may be, we should not think fit, at this late period, to disturb the rule which was, on much deliberation, established, by our superior court, as early as 1784, and which has prevailed ever since. We believe, that it is founded on as correct principles as any that can be devised ; and there is nothing in this case, especially, as presented to us, which calls for reconsideration.

The superior court is advised, that a new trial ought not to be granted.

In this opinion the other Judges concurred, except CHURCH, J., who was absent.

New trial not to be granted.