PORTER & A. *v.* RAYMOND.

*Amendment, Construction of Contracts, Conditions Precedent and Subsequent.*

When the nominal promisee is an agent, having a beneficial interest in the performance of the contract, or a special property in the subject-matter of the agreement, the legal interest and right of action are in him.

So, where a promise is made to one sustaining the character of *trustee*, he and not the *cestue que trust* is the proper person to bring an action upon it.

Where a subscription is made upon several distinct and separate conditions, these conditions must all be performed before the subscription can be collected.

ASSUMPSIT, by Royal H. Porter, George W. Tilden, and Henry O. Coolidge against Solomon W. Raymond. The original declaration contained only the money counts, and a count for interest. Subject to exception, the plaintiffs were permitted to amend by adding the following count:

Also, for that said defendant, at said Keene, heretofore, to wit, on the 30th day of January, A. D. 1871, in consideration that the said plaintiffs, at the special instance and request of the said defendant, had then and there permitted him to subscribe for two shares, of the par value of one hundred dollars each, of the capital stock of a certain voluntary corporation, proposed to be formed under the general laws of this state, for the purpose of holding or managing a building or buildings, upon a certain tract of land lying northerly of the Cheshire Railroad, in said Keene, belonging to Madison Fairbanks, Daniel Buss, Horace Adams, and John Humphrey, to be erected by the said plaintiffs, suitable for manufacturing and mechanical purposes, and furnished with the appliances for steam power, main shafting, with gearing and belting appropriate therefor, whenever the sum of fifty thousand dollars should be subscribed therefor, then and there promised the said plaintiffs to pay to them the sum of one hundred dollars upon each of said shares, at such times and in such portions as said plaintiffs should order; and the said plaintiffs aver that, thereafterwards, to wit, on

or before the first day of June, A. D. 1871, the full sum of fifty thousand dollars was subscribed for the purposes aforesaid, and the said plaintiffs ordered and directed that fifteen dollars should be paid on each of said shares, on or before the tenth day of June, 1871; that fifteen dollars should be paid on each of said shares on or before the first day of July, 1871; that twenty dollars should be paid on each of said shares on or before the first day of August, 1871; that twenty-five dollars should be paid on each of said shares on or before the first day of September, 1871; and that twenty-five dollars should be paid on each of said shares on or before the thirtieth day of September, 1871—being, in all, the sum of two hundred dollars—of all which the defendant then and there had due notice; and, in consideration thereof, then and there promised the said plaintiffs to pay them the same, according to said orders; yet, though the times limited for said several payments have long since elapsed, said defendant, though often thereto requested, has never paid the said several sums of money or any part thereof, but has neglected and refused, and still neglects and refuses so to do.

Plea, the general issue. Upon the trial the plaintiffs introduced the following instrument, to which the defendant's name was subscribed for two shares : The undersigned agree to pay the sums of money set against our names, respectively, to Royal H. Porter, George W. Tilden, and Henry O. Coolidge, who are hereby appointed trustees, for the purpose of holding, managing, and expending the money hereby subscribed, and the property which may be purchased therewith, or in which the same may be invested. This subscription is made upon the following conditions: that, when the sum of fifty thousand dollars ($50,000) is subscribed, the said trustees are to erect upon a lot of land lying northerly of Cheshire Railroad, belonging to Messrs. Madison Fairbanks, Daniel Buss, Horace Adams, and John Humphrey, in accordance with such plans as may hereafter be adopted and given them by the subscribers, or by a committee which they may choose for that purpose, a building or buildings suitable for manufacturing and mechanical purposes, and to furnish the same with appliances for steam-power, main-shafting, with gearing and belting appropriate therefor; and, when said buildings and machinery are completed, the whole property is to be leased to the said Madison Fairbanks and his associates, for a term of ten (10) years, at a rent of six per cent. on the whole investment, said Fairbanks & Co. paying all taxes assessed thereon, and keeping the buildings and fixtures properly insured and repaired at their own expense, giving said lessees the privilege of purchasing said property at any time during the term of said lease, by payment of the amount expended, with interest or rent to the time of such purchase; provided, however, that the said Fairbanks, Buss, Adams, and Humphrey, before the commencement of said buildings, shall furnish proper guaranties for the acceptance and fulfilment of such lease, and shall subscribe to this paper and convey to the said trustees the aforementioned tract of land, which they purchased of Messrs.

Holt, Boyce, and Greeley, at the cost of the same to them, to be held in trust for the purposes stated in the conditions of this instrument. And the subscribers hereto agree to form themselves into a voluntary corporation, under the general laws of this state, for the purpose of holding and managing the property acquired under the terms of this subscription, and thereupon the said trustees shall convey to the corporation all the property so held by them in trust; and the said corporation shall become bound to fulfil all contracts made in accordance with the terms above stated by said trustees; each share hereby subscribed to be one hundred dollars ($100), and to be paid at such times and in such portions as the trustees shall order. Keene, January 30, 1871.

The plaintiffs offered evidence tending to show that five hundred and three (503) shares were subscribed for besides the defendant's. It appeared that the four land-owners named in the subscription paper subscribed for twenty-five shares each, expecting that they would be permitted to pay by conveying the land therein mentioned, at its cost to them, and that they did pay in that manner, and were never requested to pay in any other way. It appeared that the assessments named in the declaration were ordered by the trustees; that a notice of the first assessment, with the names of the trustees printed at the foot, was put into the Keene post-office, directed to the defendant, who lived in Keene; that the defendant soon after acknowledged its receipt; that, after all the assessments became due, John Humphrey, by authority of the trustees, requested the defendant to pay the assessments; that the defendant at first declined, on the ground that his subscription was to be paid in work; that Humphrey offered to take pay in work, and that the defendant then objected, on the ground that the premises were expected to be mortgaged. Humphrey did not tell the defendant that the trustees had authorized him to make the demand. The defendant raised no objection at the time on account of Humphrey's want of authority, or on account of not having been notified of the assessments. It appeared that Fairbanks and others conveyed the land to the trustees, May 29, 1871; that the erection of the buildings was begun soon after; that the trustees, in conjunction with a building committee of the stockholders, made a contract with Humphrey and others, to erect the buildings for the sum of $97,500, the trustees to pay only such part of said sum as should be raised by subscription, the contractors "assuming the risk of the rest;" that the corporation was formed in March or April, 1872; that the trustees conveyed the premises to the corporation, April 8, 1872; that, prior to that time, no sums had been expended by the trustees, except such as had been raised by subscription; and that, up to the present time, more than $100,000 has been expended, about $75,000 having been raised by subscription, and about $37,500 having been borrowed.

Upon the cross-examination of one of the plaintiffs' witnesses, the defendant proposed to show that the corporation finally mortgaged the property to raise funds over and above the $50,000 which had been subscribed; that money was raised from time to time during the prog-

ress of the buildings, with the understanding that there should finally be a mortgage to secure these loans; and that some of these loans were effected several months before the corporation was organized, the money being borrowed by the contractors with the above understanding. The defendant also proposed to show that no such lease had been made as the contract requires. Subject to exception, the proposed evidence was excluded. The plaintiffs having rested, the defendant moved for a nonsuit. The motion was *pro forma* denied, subject to exceptions. The defendant's counsel having stated that, in view of the above rulings, they did not wish to go to the jury upon any question of fact, a verdict was taken for the plaintiffs.

The defendant moved to set aside the verdict, and also in arrest of judgment. Case reserved.

*Wheeler & Faulkner,* for the plaintiffs. ·

1. The amendment was properly admitted. It did not change the form of action, was not inconsistent with the original declaration, and was for the same cause of action: it changed merely the manner of stating the plaintiffs' case. *Stevenson* v. *Mudgett,* 10 N. H. 340; *Burnham* v. *Spooner,* 10 N. H. 165; *Bailey* v. *Smith,* 43 N. H. 409. The case last cited seems to be precisely in point.

2. The subscription paper declared upon contains a promise to pay to the plaintiffs the sum of money set against the name of each subscriber, a general statement of the powers and duties of the plaintiffs after a certain sum of money shall have been subscribed, and an agreement between the subscribers respecting their subsequent action. The plaintiffs are designated trustees, and the subscription is declared to be made upon certain conditions stated. Although the word *conditions* is used, the context shows that *trusts* would have more accurately expressed the meaning of the parties. If, however, conditions be the proper term, it is evident that these are divisible into two classes—conditions precedent, and conditions subsequent. The only condition precedent to the authority of the trustees to call for payment of the sums subscribed is, that not less than fifty thousand dollars should be subscribed, which condition was fulfilled before the assessments were ordered. None of the other conditions are such, that, within the intendment of the parties, they were to be, or could be, complied with before the liability of the subscribers should become fixed. Payment of the money, or, at least, a binding obligation for payment, must precede the conveyance of the land, the erection of the buildings, and the leasing of the same. It could not have been the expectation of the subscribers that the trustees should advance from their private funds the sum necessary for these purposes, or that they should procure them upon credit. If, since the time when the assessments were ordered, there has been a failure to perform any of these conditions or trusts, there may be a remedy against the trustees for a violation of their trust, but that cannot absolve the defendant from the perform-

ance of his contract, made, through the trustees, with the other sub-scribers, and the owners of the land. The assessments were ordered May 30, 1871. Before that time, 505 shares had been subscribed for, and the land conveyed in trust to the plaintiffs. The land-owners had subscribed the paper agreeably to its terms. What objection can be raised, because they subscribed, expecting to pay their subscriptions by conveyance of the land at cost, as the paper stipulated they should, we are unable to perceive. No subscriber was injured by their convey-ing land costing them $10,000 in satisfaction of their subscriptions, in-stead of insisting upon payment of $10,000 for the land when it was conveyed, and returning the same sum in instalments to answer assess-ment calls.

3. The facts offered to be shown by the defendant were immaterial, and the evidence properly excluded. What the corporation may have done after the property passed out of the control of the plaintiffs can-not affect them, or the liability of the defendant to them. And, if it is claimed that the plaintiffs had no right to expend more than $50,000, or to authorize the erection of buildings which would necessarily in-volve a larger outlay, the answer is, that, although they may be ac-countable for that elsewhere, the defendant cannot, here, avail himself of this alleged violation of their trust. It will not, however, escape the notice of the court, that nothing in the paper limits the subscrip-tion or expenditure to $50,000; that the trustees were to erect a build-ing, or buildings, *in accordance with such plans as should be adopted, and given them by the subscribers, or their committee,* leaving no discretion with the trustees as to the amount to be expended; that the subscrib-ers elected a building committee, who acted in conjunction with the trustees in contracting for the buildings; and that the trustees did not expend, or contract for the expenditure of, any more money than was actually raised by subscription.

*Lane,* for the defendant.

I. The plaintiffs are merely agents, having no personal or pecuniary interest in the transaction whatever. No consideration came from them for the alleged promise, but the consideration came from the promise of each and all the other signers to the subscription to stock. These plaintiffs cannot, therefore, maintain this action. *George* v. *Harris,* 4 N. H. 533 ; *Moore* v. *Chesley,* 17 N. H. 158 ; Chit. Pl. 4, and notes.

II. Even if they could maintain an action on the promise of the sub-scription paper, the declaration must be special, setting forth the facts on which such liability is based. They advanced no money for the de-fendant, did nothing and paid for nothing to discharge or satisfy any existing claim against him, which could form the foundation of an im-plied promise. The original counts were the money counts. The gist of these counts is, that the defendant was indebted to them for money had and received, lent or paid out, at his request, express or implied. The gist of the amended count is, that by reason of the plaintiffs' per-

mitting the defendant to sign a subscription paper at his request, he promised to pay them $200 in instalments. This is a change of the cause of action, and cannot be allowed.

III. The evidence does not support the special count.

1st. Because it does not truly state the real consideration of the alleged promise. *George* v. *Harris* and *Moore* v. *Chesley.* 2d. It does not set forth the several conditions on which the promise was made. It is an unquestioned rule of pleadings, that all the conditions on which the promise depends as a valid obligation, must be set forth in the declaration and proved. 1 Chit. Pl. 297, 320; *Smith* v. *Wheeler*, 29 N. H. 334; *Colburn* v. *Pomeroy*, 44 N. H. 19. The conditions precedent to the legal validity of the promise, we claim, are at least the following: 1. That $50,000 should be *bona fide* subscribed for in money with which to erect buildings, etc., on the tract of land owned by Fairbanks, Buss, Adams, and Humphrey. 2. That before the commencement of the buildings, Fairbanks, Buss, Adams, and Humphrey should furnish proper guaranties that when the buildings, etc., should be completed, they would take a lease of the whole property for ten years at six per cent. on the whole investment, and would pay the taxes, insurance, and repairs; and should subscribe to said subscription paper, and convey said tract of land to the trustees at cost, for the purpose of having the buildings erected thereon, as represented in said paper. The only condition set out in the declaration is, that $50,000 was subscribed for with which to erect the buildings, etc. At the trial only $50,300 was proved, and of this $10,000 was subscribed for by Fairbanks, Buss, Adams, and Humphrey, with the understanding that it was to be paid for by the tract of land, and it was so paid. So that only $40,300 was *bona fide* raised. This condition was not, therefore, performed. *New London Institute* v. *Prescott*, 40 N. H. 330. The enterprise for which the defendant subscribed, as described in the subscription paper, was never commenced or carried out in good faith to the subscribers. Instead of raising and expending $50,000 on the tract of land worth $10,000, as originally contemplated, guarded with the provision of securing a proper guaranty for a lease of ten years of such property at six per cent., with taxes, insurance, and repairs paid, the parties who had the management of the business commenced building on an extensive scale, requiring more than double the money fixed upon in the subscription paper, and involving the necessity of borrowing money, to be finally secured by mortgage on the premises, to complete the establishment. The consequences of this change were, that what would have proved a fair investment under the original agreement, has proved in this respect substantially a failure under the present management. We think, for the foregoing reasons, the motion for a nonsuit should have been granted, and that the verdict must now be set aside, or that judgment should be arrested.

Plaintiff's additional brief.

1. Upon the first point presented in the defendant's brief, we cite the

following authorities: *Treat* v. *Stanton*, 14 Conn. 445; Story's Agency, secs. 393 to 397; 1 Chitty's Pleading 4; *Schermerhorn* v. *Van Aerheyden*, 1 Johns. 139; *Fisher* v. *Ellis*, 3 Pick. 321; *Trustees of Amherst Academy* v. *Cowls*, 6 Pick. 427; *Thompson* v. *Page*, 1 Met. 565; *Ives* v. *Sterling*, 6 Met. 310; *Colburn* v. *Phillips*, 13 Gray 64; *Carey* v. *Rogers*, 21 N. H. 247; *Doe* v. *Thompson*, 25 N. H. 217; *Goodall* v. *New Eng. Ins. Co.*, 25 N. H. 169; *Sanders* v. *Hillsborough Ins. Co.*, 44 N. H. 238; *Barnes* v. *Company*, 45 N. H. 28. *George* v. *Harris*, 4 N. H. 533, cited by the defendant, is not in point; and *Moore* v. *Chesley* has been, in effect, overruled by the doctrine of the subsequent cases in this state cited above. It will be noticed, also, that the case at bar differs from *Moore* v. *Chesley* in this,—that the persons to whom the money is payable are expressly named. In *Trustees of Amherst Academy* v. *Cowls*, Chief Justice PARKER says,—"The promissor had received nothing at the time from the payees which was of any pecuniary value, but it is quite sufficient, to create a consideration, that the other party, the payee, shou.d have assumed an obligation in consequence of receiving the note, which he was compellable, either at law or equity, to perform." And, after reviewing all the Massachusetts cases in any degree analogous to the case then under consideration, the learned judge further says,— "We do not find that it has ever been decided, that, where there are proper parties to the contract, and the promisee is capable in law of carrying into effect the purpose for which the promise is made, and is, in fact, answerable to law for negligence or abuse of his trust, such a contract is void for want of consideration." In the case at bar there can be no question that there were proper parties to the contract; that the plaintiffs were capable in law of carrying into effect the purpose for which the promise was made, and that they were amenable to law for neglect or abuse of their trusts. The present case differs, also, from the cases in which a similar question has been raised, in this,—that while in those the subscription was to raise a fund for some public, charitable, or religious use, in which the individual subscribing could have no pecuniary interest, in this the subscription contemplated an enterprise from which, an annual division of profits, or a speedy return of the capital, with interest, was anticipated. The fact that the defendant was permitted to become a subscriber for an interest in such an enterprise, is, of itself, sufficient to create a consideration.

2. It cannot fairly be inferred from the agreement, that the land should be conveyed *and* $50,000 subscribed before the subscription should be binding, for that would necessitate a subscription of $60,000; whereas, by the terms of the instrument, the plaintiffs were to commence operations *as soon as* $50,000 *should be subscribed;* and the first step necessary to be taken would be to secure the land, which could not be done unless the trustees were put in funds, or had a valid subscription upon which to rely. In the view of the subscribers, much of the success of the enterprise depended upon the location of the mill. That location, therefore, was fixed by the articles of subscription. To secure this location, it was stipulated that Fairbanks and others

should subscribe the paper, thus making themselves parties, which they did, and, before the buildings were commenced, should convey the land. But it was not contemplated that they should convey the land without payment. It is plain that the only condition precedent to the authority of the trustees to make assessments was a *bona fide* subscription of $50,000.

3. *New London Institute* v. *Prescott*, 40 N. H. 330, cited by the defendant, is not in point. In that case, it was understood by both parties that one of the subscribers was, in fact, to pay nothing. In this case, the land-owners *expected* to pay, and were afterwards permitted to pay, in land at its cost, which the other subscribers had expressly stipulated they should convey at cost. It does not appear that this expectation of the land-owners was encouraged by or even made known to the trustees; and, if it did, there would be nothing in the transaction upon which even a suggestion of fraud could be based.

4. If, as is suggested in the defendant's brief, the enterprise has not proved remunerative, an additional reason is offered for compelling the defendant, by fulfilling his agreement, to lighten the burdens of his fellow subscribers, who, unlike him, have not sought, upon trifling pretexts, to avoid their legal and moral obligations.

SARGENT, C. J. The plaintiffs are the proper parties to recover this money in their own name. The promise is made directly to them, stating that they were to act as trustees for the subscribers. They were authorized to make assessments from time to time as the money was needed; they were the men to whom it was made payable, by the agreement of all parties, and when paid, plaintiffs were to use it as trustees for the subscribers, in constructing buildings, which they were to control for the time being as such trustees, and finally convey to the corporation, when that should be formed and ready to receive the property. It might be a much more troublesome question to decide who could properly collect this money, if the plaintiffs could not.

The authorities seem uniform that where the nominal promisee is an agent, and has a beneficial interest in the performance of the contract, or a special property in the subject-matter of the agreement, the legal interest and right of action is in him; and when a promise is made to one sustaining the character of *trustee*, he and not the *cestue que trust*, or person ultimately interested, is the proper person to bring an action upon it. *Treat* v. *Stanton*, 14 Conn. 445; *Barnes* v. *Insurance Co.*, 45 N. H. 21, 28, and cases; *Doe* v. *Thompson*, 22 N. H. 217; *Goodall* v. *Insurance Co.*, 25 N. H. 169; 1 Ch. Pl. 7; *Cobb* v. *Insurance Co.*, 6 Gray 192.

We do not see any objection to the amendment, the court having been satisfied, as we are to assume they were before it was allowed, that this sum specified in this new count is the identical sum which was sought and intended to be recovered under the old counts. The *form* and the *cause* of action remain unchanged. *Stevenson* v. *Mudgett*, 10 N. H. 340; *Bailey* v. *Smith*, 43 N. H. 409, and cases cited.

The subscription paper was introduced to sustain this count. Does this paper and the accompanying evidence, as stated in the case, sustain it? The first part of the paper is like an ordinary subscription paper. Then follows this paragraph: "This subscription is made upon the following conditions: that, when the sum of $50,000 is subscribed, said trustees are to erect, upon a lot of land lying northerly of Cheshire Railroad, belonging to Messrs. Madison Fairbanks, Daniel Buss, Horace Adams, and John Humphrey, in accordance with such plans as may be hereafter adopted and given them by the subscribers, or by a committee which they may choose for that purpose, a building or buildings suitable for manufacturing and mechanical purposes, and to furnish the same with appliances for steam-power, main-shafting, with gearing and belting appropriate therefor; and when said buildings and machinery are completed, the whole property is to be leased to the said Madison Fairbanks and his associates for a term of ten years, at a rent of six per cent. upon the whole investment, said Fairbanks & Co. paying all taxes assessed thereon, and keeping the buildings and fixtures properly insured and repaired at their own expense, giving said lessees the privilege of purchasing said property, at any time during the term of said lease, by payment of the amount expended, with interest or rent to the time of such purchase; provided, however, that the said Fairbanks, Buss, Adams, and Humphrey, before the commencement of said buildings, shall furnish proper guaranties for the acceptance and fulfilment of such lease, and shall subscribe to this paper, and convey to the said trustees the aforesaid tract of land which they purchased of Messrs. Holt, Boyce, and Greeley, at the cost of the same to them, to be held in trust for the purposes stated in the conditions of this instrument."

The evidence tended to show that the sum of $50,000 was subscribed, and that the buildings had been constructed; and so far as appears, we judge they may have been constructed according to the plans adopted by the subscribers or their committee, though that fact is not made very plain. If such was the fact, then the circumstance that the buildings cost more than the amount subscribed would be no objection, that we can see. We find nothing in the contract that makes it necessary that $50,000 should be subscribed, aside from the subscriptions of Fairbanks, Buss, Adams, and Humphrey, provided they chose to sign and helped to raise that amount; and we see nothing in this circumstance that could invalidate the contract, nor do we see that there was anything wrong in their conveying the land at cost in payment of their subscription. It made no difference, in the end, whether they conveyed the land in payment of their subscription, or received the money for the land, and then paid the money back on their subscription.

We see no objection to the form or manner of the assessments, nor would it seem that upon the evidence stated there was any substantial objection to the notice or the demand upon the defendant. But there is one point on which the proof is fatally defective. It does not appear that Fairbanks and others, before the commencement of the buildings, furnished the proper guaranties for the acceptance and fulfilment of

said lease.   Upon a careful examination of the contract, it will be seen that the subscription was made upon certain conditions to be performed by the trustees, which conditions were to be performed upon another condition precedent; and unless both these conditions were complied with, the promise to pay the money subscribed could not be enforced. The first condition is, that " when the sum of fifty thousand dollars is subscribed, the said trustees are to erect," upon a certain lot of land of said Fairbanks and others, and in accordance with certain plans to be furnished them in a specified way, " a building or buildings suitable for manufacturing and mechanical purposes, and to furnish the same with appliances for steam-power, main-shafting, with gearing and belting appropriate therefor."

Then follows a statement of what is to be done with the buildings when completed ; that the same are to be leased to said Fairbanks and others for ten years at six per cent. upon the whole investment ; that they should pay all taxes upon the premises, should keep the same insured and in good repair; and they were to have the right at any time within the said ten years to purchase the property at cost and interest. Then follows the second condition : " provided, however, that the said Fairbanks, Buss, Adams, and Humphrey, *before the commencement of said buildings*, shall furnish proper guaranties for the acceptance and fulfilment of such lease, and shall subscribe to this paper, and convey to the said trustees the aforementioned tract of land "—describing it, and declaring the trusts for which it was to be held.

Here are three things that are to be done before the commencement of the buildings, viz., (1) Fairbanks and others are to furnish proper guaranties for the acceptance and fulfilment of such lease ; (2) they shall subscribe to this paper, and (3) shall convey to said trustees said tract of land on which the buildings are to be built.   The trustees were to build the buildings, and, of course, it was their duty to see that these three conditions were complied with before they commenced the buildings.   Two of them were performed,—the subscribing the paper, and the conveying the land upon the terms specified ; but the other, which was perhaps as important as either to the subscribers, is not shown to have been complied with.   We think it was necessary for the plaintiff to show this fact in order to make out his case.   If money is payable upon condition precedent expressly stated, as in this case, in order to recover the money, the plaintiff must show the condition complied with.

Reading this whole contract together, we find the order in which the different parts of the transaction were to be done to be as follows :  First, $50,000 was to be subscribed ; then, guaranties were to be taken from Fairbanks and others that they would take a lease of the premises when completed for ten years, and would pay a certain rent, with other stipulations as to their duties and rights ; next, they (Fairbanks and others) were to subscribe the paper, or if they had done so before, that would answer equally as well.   Then they were to convey the land to the trustees, after which the trustees were to

build upon said land a building or buildings, &c., according to certain plans and specifications, and, when completed as specified, the property was to be leased to Fairbanks and others upon the terms and stipulations agreed.   It was evidently contemplated that, after all the conditions precedent to the commencement of the buildings had been performed and complied with, the stockholders should form themselves into a body corporate under the statute, that the trustees should convey all this property when completed to said corporation, and that the corporation should lease to Fairbanks and others.

And we think a fair and just construction of this contract would require that the trustees should see that all these conditions were complied with that were to be performed before they were authorized to begin the buildings, before they could properly assess the shares, or at least could legally collect an assessment.   The money was to be assessed and collected to build with, and when needed for that purpose it might be collected ; but not until the trustees had seen that all things were done that were required to be done, in order to authorize them to commence the buildings.   Such a construction, we think, is eminently just, as it secures the rights of all subscribers to the paper; while no one is injured by it, as it does not cause a moment's delay after the trustees were authorized to strike the first blow upon the buildings.

If we interpret the contract as the plaintiffs do, that the words " this subscription is made upon the following conditions " should mean " this subscription is made upon the following trusts," it would not change or affect the result.   It would then be upon this condition : " provided, however," that said Fairbanks and others, " before the commencement of said buildings, shall furnish proper guaranties," etc., and " shall subscribe to this paper," and shall " convey to said trustees the before-mentioned tract of land."   In any view we can take of this contract, we think the true intention was, that not only the fifty thousand dollars should be subscribed, but that these guaranties should be furnished, the paper subscribed, and the land conveyed, before the trustees should begin to build, or should be authorized to collect money to build with. This construction seems necessary for the safety of the subscribers for the stock.

There are not facts enough stated in the case to show whether the evidence offered by the defendant was competent or not.   We see no reason why the corporation might not mortgage its property to secure its debts, if such mortgage was made subject to said lease, if any such lease existed or was contemplated ; nor was the fact that no such lease had been given necessarily conclusive that the proper guaranties had not been taken of Fairbanks and others, and that there might not be sufficient reason for the delay in giving the lease, provided the company had not put it out of their power to lease according to the contract, by giving mortgages inconsistent with that arrangement.   The corporation may still lease according to the arrangement originally made, so far as appears.   The giving of the lease was to be subsequent to the payment of the money and the completion of the buildings, and is to be per-

formed in a reasonable time after their completion ; and what would be such reasonable time, is a question of fact depending on all the circumstances of the case.

Upon another trial, all the facts relating to the mortgage, and the reasons why a lease has not been given earlier, can be shown, if they become material. But, unless it be shown that the trustees took the proper guaranties of Fairbanks and others for the acceptance and performance of the lease, as well as to secure the subscription of $50,000, and obtain the signatures of Fairbanks and others to the paper, and their conveyance of the land to the trustees, before they began upon said buildings, we think the plaintiffs cannot recover. This ver-must be set aside, and a                                    *New trial granted.*